## AMES *v.* LAKE INDEPENDENCE LUMBER CO.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—TYPHOID FEVER—DRINKING CONTAMINATED WATER NOT FURNISHED BY EMPLOYER—ACCIDENT.

    Where an employee, while temporarily engaged in helping to raise a building owned by defendant, discovered a pipe discharging water into a trough in defendant's barn located about 400 feet away, and, without defendant's knowledge or consent, drank therefrom, an attack of typhoid fever, even if it be conceded that it resulted therefrom, was not an industrial accident arising out of and in the course of his employment, within the meaning of the workmen's compensation act.

2. SAME—NOTICE—STATUTORY LIMITATION.

    Where an employee terminated his employment on November 22d, noticed that he was coming down with typhoid fever two days later and was taken to the hospital on December 15th following, but gave no notice of any dis-

On typhoid fever as accident within the meaning of the workmen's compensation acts, see note in 6 A. L. R. 1466.

On time within which notice must be given or other steps taken to recover under workmen's compensation acts, see notes in L. R. A. 1917D, 138; L. R. A. 1918E, 558.

On necessity and sufficiency of evidence that typhoid fever contracted by applicant for compensation is attributable to his employment, under the rules of the workmen's compensation laws, see note in 20 A. L. R. 80.

ability to his employer until April 28th following, said notice was insufficient under the statute (Act No. 64, Pub. Acts 1919, § 15), in the absence of evidence that there was anything to prevent notice being given within the three months limited in the statute after plaintiff knew of his disability.

3. SAME—RIGHT TO NOTICE A SUBSTANTIAL ONE.

The statutory condition that the party sought to be charged must be given or have notice or knowledge of the industrial accident within the limitation provided is a substantial right, which, when claimed, may not be ignored either by the department of labor and industry or the court.

Certiorari to Department of Labor and Industry. Submitted January 18, 1924. (Docket No. 89.) Decided March 5, 1924.

Henry Ames presented his claim for compensation against the Lake Independence Lumber Company for an accidental injury in defendant's employ. From an order awarding compensation, defendant brings certiorari. Reversed, and order vacated.

*Thomas H. Murray*, for appellant.

*R. W. Nebel*, for appellee.

STEERE, J. The Lake Independence Lumber Company owned and operated a sawmill at a lumbering town in Marquette county called Big Bay, located on Lake Independence, some distance northwest of the city of Marquette. The town had a population of about 400 persons consisting mainly of the lumber company's employees and their families. Shortly before November 7, 1921, Charles Keller, of Munising, Michigan, who was engaged in the business of raising and moving buildings, contracted with the Lake Independence Lumber Company to straighten up and raise one of its buildings at Big Bay for an agreed price of $475. To carry out this contract he hired

and took with him plaintiff Henry Ames, his brother, David Ames, and Lloyd Wiltfong, all of Munising, who had been in his employ before and were experienced in that kind of work. He agreed to, and did, furnish them transportation and board, and pay them $3 per day from the time they left Munising until they returned. They went by rail, arriving in Big Bay on November 7, 1921, and remained there two weeks, during which time they completed the contract and did some additional work, for all of which Keller was paid. They then returned to Munising on November 22, 1921. After they returned to their respective homes in Munising three of the four men came down with typhoid fever and were taken to the hospital where they remained various lengths of time undergoing and recovering from a run of the fever. The fourth man, David Ames, had been innoculated for that disease while in the army and remained well. Keller became ill about November 30th, Wiltfong about December 4th. Plaintiff, Henry Ames, testified he felt it coming on him about two days after they left Big Bay and his condition grew worse until he was taken to the hospital on December 15th, where he remained until January 10, 1922. Each of the three made application to the department of labor and industry for an award of compensation against the Lake Independence Lumber Company, claiming the disease with which they had suffered was an industrial accident which arose out of and in the course of their employment in the service of the company at Big Bay. Arbitration proceedings were had before a deputy commissioner on June 9, 1922. Keller was clearly shown to have been an independent contractor and his claim was denied. It was held that plaintiff and Wiltfong had suffered an industrial accident as employees of contractor Keller while in performance of his contract with the lumber company and were en-

titled to compensation under the provisions of the workmen's compensation law, as amended by Act No. 173, Pub. Acts 1921 (Comp. Laws Supp. 1922, § 5430, [2]), making the principal liable for industrial accidents sustained by employees of a contractor when engaged in performance of his contract. *Burt* v. *Woodenware Co.*, 222 Mich. 699. Plaintiff was awarded $14 per week ("less one week he worked at his employment") from November 23, 1921, to the time of the arbitration, amounting to $385, and weekly payments thereafter at the same rate (for how long not stated), and for medical services $74.30. On appeal to the commission the award was affirmed.

While the question of whether a disease is an accident, or accidental injury, within the meaning of the compensation act, has not always been harmoniously viewed by the courts, diseases which are the direct result of an accidental physical injury or supervene to increase the incapacity caused by it have come to be generally recognized as of that nature; and some courts, including this, have, under their statutes, sustained industrial accident commissions or boards in finding typhoid fever an industrial accident under special circumstances. *Vennen* v. *Lumber Co.*, 161 Wis. 370 (154 N. W. 640, Ann. Cas. 1918B, 293); *Frankamp* v. *Fordney Hotel*, 222 Mich. 525. This court having in the latter case sustained the finding of the commission that the contraction of typhoid fever was an industrial accident within the meaning of our compensation act, the main question now before us is whether, within the meaning of the act, there was competent evidential support for the finding of the commission that it arose out of and in the course of plaintiff's employment while at Big Bay.

In support of the decision reached the board found, briefly stated, that prior to Keller and his crew going to Big Bay there were no typhoid fever cases in Munising. They left in the morning, neither ate or

drank anything en route and arrived in Big Bay at 1:30 p. m.   The only water they drank while there was from a well at the hotel where they boarded and from a pipe leading from the lake, the intake of which was about 1,600 feet from the outlet of the sewer of the town.   While at work on the building they were raising they drank from this pipe for eight or nine days until warned by a stable boss that it was not fit to drink, after which they got their water from the well at the hotel.   Dr. O'Brien, of Munising, who professionally attended one or more of the men and had "gone through a number of typhoid epidemics," testified that the period of incubation after contracting the disease was from 10 to 23 days, generally about 17 days; that when called in such cases the physician endeavors to find the source of infection, and from the history of this case it was his opinion the men contracted typhoid fever at Big Bay by drinking water from the pipe which came from Lake Independence, and "they got that typhoid fever out of the lake."

The testimony showed that Lake Independence is a body of water about a mile and a half or two miles across, fed by the Yellow Dog river and other smaller streams, its outlet to Lake Superior being a larger stream named Iron River.   Big Bay has water works and a sewer system for domestic purposes.   The water was taken from the lake, the intake being 100 feet or more off shore in 8 or 10 feet of water.   The hotel and some of the houses were equipped with bath rooms and modern conveniences connected with the water and sewer systems, while others were not.   It is estimated that about half the inhabitants of the town were accommodated with those conveniences.   The water in the lake was warm in the summer and not generally regarded by the inhabitants as good to drink, the supply for that purpose being taken from wells and springs available throughout the town.

Mr. Orr, defendant's assistant superintendent, said he had seen their employees drinking lake water when the other was not convenient.     He also testified that the outlet of the sewer was not far from the shore and about 1,600 feet from the intake of the water works, that they never had an epidemic of typhoid fever in Big Bay or a case of typhoid fever there to his knowledge.      Dr. Brennan, a resident physician practicing in Big Bay, testified he knew of but one case there, a woman, and in tracing its origin he found she went to a town in Wisconsin to nurse her brother who had typhoid fever and on returning to Big Bay she came down with it, that some people use the water from the lake right along and others will not drink it, either because they are afraid of it or because they prefer the spring water, and it seemed to be the general opinion that the spring water was better.

When plaintiff and the others from Munising went there neither defendant or any one else furnished them any water from the lake to drink or pointed this pipe out to them.     It ran under the lumber company's barn and came up through the floor to a horse trough. Having occasion to go to the barn, Wiltfong discovered it and told the others.     The barn was some 400 feet from where they worked but nearer than their hotel, and when they wanted water while at work they drank there.     No one else is shown to have known they were doing so until 8 or 9 days later the barn boss happened to see one of them drinking from the pipe and told him, as the latter testified, "that the water was hardly fit for the horses to drink, let alone men."     They then "asked two or three fellows that were working for that company there, and they said they knew the water was not good."     Thereafter they took their drinking water from the well at the hotel.     It is not shown that the barn boss or any one else with whom they talked stated in what particular the lake water

was not good or unfit to drink.   There was no proof of any laboratory test showing that it contained typhoid bacillus, or that any one had previously contracted typhoid fever or otherwise suffered ill effects from drinking it.

But assuming there is evidence from which the commission might infer plaintiff contracted typhoid fever in drinking water from this pipe, it is not shown to have been an industrial accident caused by exposure to some special hazard incidental to or arising out of his employment.   Defendant did not furnish him this water for the purposes of or in connection with his work, or in fact know that he was drinking it.   It was not at, or in view of, the place of his employment. He found it some distance from there in a barn, in a condition indicating it was put there to water animals, and helped himself to it.   Defendant had not hired him and did not control his actions.   In *Frankamp* v. *Fordney Hotel, supra,* plaintiff was waitress in a hotel where she roomed and boarded, and was there furnished by her employer with contaminated water for drinking, which was piped into the hotel from a well on its premises.   No such condition existed in the instant case.

Accepting contraction of typhoid fever as an industrial accident, it is self-evident that neither plaintiff or defendant knew of the accident when it happened or until after plaintiff had terminated his employment at Big Bay and left there, on November 22, 1921. Knowledge of it came to him when, as he related, he first noticed that he was coming down with typhoid fever about two days after he left Big Bay, and he grew worse until taken to the hospital on December 15, 1921, for the disability or incapacity resulting from the accident had then plainly made itself apparent to him.   He was asked and answered:

"*Q.* How long were you in the hospital?

"*A.* Three weeks, five days and one-half.
"*Q.* What did you have?
"*A.* Typhoid fever."

The first notice or knowledge of the accident, or injury, which defendant is shown to have received was a formal "Notice to employer of claim for injury," dated April 28, 1922, sent by plaintiff's attorney, stating, amongst other things, that "the accident occurred the 30th day of November, 1921, at Big Bay, Michigan." Section 15, part 2, of the employers' liability act, as amended (Act No. 64, Pub. Acts 1919 [Comp. Laws Supp. 1922, § 5445]), yet provides:

"Sec. 15. No proceedings for compensation for an injury under this act shall be maintained, unless a notice of the injury shall have been given to the employer within three months after the happening thereof, and unless the claim for compensation with respect to such injury, which claim may be either oral or in writing, shall have been made within six months after the occurrence of the same." * * *

While the amendment has relaxed the rigidity of the statute of limitations as to time of giving notice of the accident and claim for compensation under certain exceptional circumstances, the commission does find and it is not shown that there was anything to prevent notice of the accident being given defendant within three months from the time plaintiff knew he had typhoid fever and the actual injury, disability or incapacity had made itself apparent. Neither does it appear that defendant had any knowledge or notice of the accident, injury, incapacity or disability within three months after the same became apparent. This is a special statutory proceeding. The condition that the party sought to be charged must be given or have notice or knowledge of the accident within the limitation provided is a substantial, statutory right which when claimed may not be ignored either by a commission or court. *Podkastelnea* v. *Railroad Co.,*

198 Mich. 321; *Herbert* v. *Railway Co.,* 200 Mich. 566.

For the foregoing reasons the award must be and the same is hereby set aside.

CLARK, C. J., and McDONALD, BIRD, SHARPE, MOORE, FELLOWS, and WIEST, JJ., concurred.