RAMÓN MONTANER, en su carácter de Administrador del Fondo del Seguro del Estado, recurrente, *v.* LA COMISIÓN INDUSTRIAL DE PUERTO RICO, compuesta de los SRES. MANUEL LEÓN PARRA, Presidente, y F. PAZ GRANELA y JUAN M. HERRERO, Comisionados Asociados, recurrida, y GERTRUDIS CRUZ, representado por su madre con patria potestad, AMADA CRUZ, peticionarios ante la Comisión Industrial en el caso de DOROTEO ROSADO.

Núm. 182.—*Sometido:* Enero 8, 1940. *Resuelto:* Marzo 11, 1940.

*Hon. Procurador General George A. Malcolm (E. Campos del Toro, Procurador General Interino, en el alegato) E. de Aldrey, Procurador General Auxiliar, y Víctor J. Vidal González y G. Atiles Moréu, Asesores legales éstos del Fondo del Estado, abogados del recurrente; M. León Parra, abogado de la recurrida; Virgilio Brunet y Miguel A. Casiano, abogados del beneficiario.*

EL JUEZ ASOCIADO SEÑOR HUTCHISON emitió la opinión del tribunal.

El Administrador del Fondo del Estado solicita se revoque una decisión de la Comisión Industrial. Sostiene que la Comisión cometió error:

Al resolver que la alegación del Administrador de que el obrero no informó su caso dentro del tiempo prescrito por la ley no fué planteada oportunamente, cuando de la decisión del Administrador aparece claramente expuesta la cuestión y la misma fué objeto de amplia prueba ante la Comisión.

Al no considerar esa cuestión—asumiendo para los fines de la
argumentación que ella fué suscitada por primera vez en una moción
de reconsideración—porque dicha alegación envolvía una cuestión
jurisdiccional, de la cual no era dable al Fondo del Seguro del Es-
tado renunciar y la cual podía suscitarse en cualquier etapa del
proceso.

Al resolver que en caso de muerte por accidente del trabajo un
biznieto tiene derecho a compensación, si dependía para su subsis-
tencia del salario de su bisabuelo.

■■ Al resolver el caso, el Administrador dijo que de
la investigación practicada se desprendía que el accidente
había ocurrido el 10 de febrero y que el mismo no fué re-
portado hasta el 17 de dicho mes, cuando el obrero explicó a
un médico que no había informado el accidente por no ha-
berle dado importancia a la herida. El médico describió la
lesión como una herida incisa superficial como de tres cuar-
tos de pulgada. Al ser llamado el médico, éste halló al pa-
ciente padeciendo de tétano.

El Administrador basó su decisión en falta de prueba
para demostrar que la lesión había sido recibida en el curso
y como consecuencia de su empleo; o para establecer una
dependencia protegida por la ley.

Durante la vista celebrada ante la Comisión Industrial
hubo alguna prueba de la cual la Comisión pudo o no haber
hallado, de habérsele suscitado la cuestión, que transcurrie-
ron más de cinco días antes de informarse el accidente.
También hubo alguna prueba de la cual la Comisión pudo
haber resuelto que la razón por la cual el obrero dejó de in-
formar el accidente era suficiente, de haberse planteado tal
cuestión. Al empezar la vista los letrados de ambas partes
informaron el alcance y extensión de las cuestiones envuel-
tas, conforme indica el incidente que se reseña a continuación:

"Lcdo. Casiano: Bernardo Rivera. En este caso hay dos cues-
tiones ahora en *issue,* cuestiones en controversia. Admitido como
está por el Fondo del Estado, por su resolución, de que el obrero
falleció a consecuencia de un tétano, producido por una herida en
una rótula, en la rótula de la rodilla izquierda, lo cual consta, ha-

biéndose aceptado en la resolución del Fondo del Estado de que el obrero murió de tétano producido por una herida en la rótula izquierda, y habiendo denegado el caso debido a que no se probó la existencia de un accidente, en ese caso solamente hay dos cuestiones a probar: si hubo o no un accidente del trabajo, ya que se aceptó de que el tétano fué producido por una herida. . . .

"Sr. Presidente: Esto es, si la herida fué producida por un accidente del trabajo.

"Lcdo. Casiano: Y si hay beneficiarios en este caso. Ésas son las dos cuestiones en *issue*.

"Sr. Presidente: Vamos adelante. ¿Qué dice el Fondo del Estado?

"Lcdo. Atiles: Sí, son esas cuestiones, si el accidente ocurrió o no en el curso del trabajo, y si hay dependencia legal."

El juicio terminó el 20 de junio de 1939. Se concedió a las partes un término de diez días para radicar sus alegatos. El caso fué resuelto el 18 de agosto. En el ínterin este tribunal resolvió el 29 de julio el caso de *Torres* v. *Comisión Industrial*, 55 D.P.R. 438. Se radicó una moción de reconsideración ante la Comisión Industrial con fecha 25 de agosto. En esta moción el letrado del Fondo del Estado presentó por primera vez ante la Comisión la cuestión de que el obrero lesionado había dejado de informar el accidente dentro del período estatutario de cinco días.

El peticionario cita los siguientes casos:

*Spring Canyon Coal Co.* v. *Industrial Commission*, 201 P. 173, 178; *Walsh* v. *Waldron & Sons* (Conn.) 153 A. 298, 300; *Meade Fiber Corp.* v. *Starnes*, 247 S. W. 989; *Patten Hotel Co.* v. *Milner*, 238 S. W. 75; *New Armsterdam Casualty Co.* v. *Industrial Accident Commission*, 225 P. 459, 460; *Bushnell* v. *Industrial Board, et al.* (Ill.) 114 N. E. 496, 497; *Ohio Oil Co.* v. *Industrial Commission* (Ill.) 127 N. E. 743, 745; *Barrett Co.* v. *Industrial Commission et al.*, (Ill.) 123 N. E. 29; *Bloomfield* v. *November* (N. Y.), 114 N. E. 805; *Torres* v. *Comisión Industrial*, supra.

El peticionario también copia de las opiniones emitidas en dichos casos, mas no cita las disposiciones estatutarias

envueltas. En tanto en cuanto hayamos podido determinar, esas disposiciones estatutarias son distintas a la nuestra.

El estatuto de Connecticut se cita en el caso de *Simmons* v. *Holcomb* (Conn. 1923), 120 A. 510, así:

"Sección 5360. *Solicitudes de compensación.*—No se considerará ninguna solicitud de compensación bajo las disposiciones de este capítulo a menos que se haga una solicitud de compensación por escrito dentro de un año contado a partir de la fecha en que el obrero sufre la lesión; . . . pero cuando ha habido una vista, se ha solicitado por escrito la celebración de una vista o se ha señalado ésta dentro de un año a partir de la fecha del accidente, o cuando se ha sometido un convenio voluntario dentro de dicho período de un año, la falta de tal solicitud no impedirá que se instruyan y consideren tales procedimientos, y en ningún caso cualquier defecto o inexactitud en la solicitud impedirá que se consideren tales procedimientos, a menos que el patrono demuestre que no tenía conocimiento del accidente y que con ello fué perjudicado."

La sección 22 de la Ley de Compensaciones por Accidentes del Trabajo del Estado de Tennessee (capítulo 123 de las Leyes de 1919) puede hallarse en el caso de *Black Diamond Collieries* v. *Seal* (Tenn. 1921), 234 S. W. 322. Ésta lee así:

"Sección 22.—Se ordena además que todo obrero lesionado o su representante, inmediatamente que ocurra un accidente, o tan pronto como sea razonable y práctico, notificará o hará notificar por escrito del mismo al patrono, y el obrero no tendrá derecho a los honorarios médicos ni a la compensación que pueda corresponderle bajo las disposiciones de esta ley desde la fecha del accidente hasta que se dé tal aviso, a menos que se demuestre que el patrono tenía de hecho conocimiento del accidente; y ninguna compensación será pagadera bajo las disposiciones de esta ley a menos que se dé tal notificación por escrito al patrono dentro de treinta días contados a partir de la fecha en que ocurre el accidente, a no ser que a satisfacción del tribunal a que se presente la solicitud de compensación exista una excusa razonable para haberse dejado de hacer tal notificación."

La sección 11 de la "Workmen's Compensation Insurance and Safety Act" de 1917 del Estado de California prescribe:

"Sección 11 (a).—A menos que la indemnización sea pagada o se celebre un acuerdo en relación con el pago de la misma dentro del límite de tiempo prescrito en esta sección para la iniciación de procedimientos en cobro de ella, el derecho a instruir tales procedimientos habrá prescrito; disponiéndose, que la radicación de un escrito ante la Comisión en que se solicita cualquier parte de los beneficios prescritos por esta ley, hará ineficaz esta sección en lo que a reclamaciones ulteriores de indemnización proveniente de la misma transacción radicadas por otras personas se refiere, y el derecho a presentar tales reclamaciones ulteriores se regirá por las disposiciones de las secciones 20 (d) y 65 (b) de esta ley.

"(b) Los términos dentro de los cuales pueden iniciarse los procedimientos en cobro de indemnización son los siguientes:

"(1) Los procedimientos para el cobro del beneficio provisto por el inciso (a) de la sección 9 o para el cobro del pago por incapacidad provisto por el inciso (b) de dicha sección 9 deben iniciarse dentro del término de seis meses contado a partir de la fecha del accidente, a no ser que esta ley disponga lo contrario."

La sección 24 de la Ley de Indemnizaciones a Obreros del Estado de Illinois de 1913 (*Bushnell* v. *Industrial Board*, 114 N. E. 496, 497) lee:

"No se instruirá ni considerará ningún procedimiento en cobro de indemnización bajo esta ley a menos que la solicitud de compensación se haga dentro del término de seis meses contado a partir de la fecha del accidente, o, en caso de que se hayan efectuado pagos bajo las disposiciones de esta ley, a no ser que se haya radicado una solicitud escrita dentro del término de seis meses después de haber cesado dichos pagos."

Este tribunal no resolvió en el caso de Torres, supra, que el dejar de informar un accidente dentro de cinco días priva a la Comisión Industrial de toda facultad para actuar sobre una solicitud de compensación, no obstante haber el Administrador del Fondo del Estado renunciado al requisito estatutario. En dicho caso no estaba envuelta semejante cuestión.

En la opinión se hace de un caso de Michigan (*Ames* v. *Lake Independence Lumber Co.*, 226 Mich. 83, 90, 197 N. W. 499, 502) el siguiente extracto (bastardillas nuestras):

"Éste es un procedimiento estatutario especial. La condición de que la parte a quien se demanda debe ser notificada o tener conocimiento del accidente, es un *derecho estatutario sustancial* y *cuando se alega* no puede ser ignorado por una comisión o por una corte." (Pág. 443.)

Conforme se indicó posteriormente en el mismo caso de Torres (bastardillas nuestras):

"En algunas jurisdicciones en que la ley tiene disposición igual a la nuestra, la falta del obrero de comparecer ante el médico para examen dentro de cinco días, le priva del derecho a compensación y además le impide entablar o seguir procedimiento alguno para obtener tal compensación. Se ha decidido que una Comisión Industrial no tiene jurisdicción para resolver un caso cuando no se demuestra que se notificó al asegurador dentro del término prescrito por el estatuto.

" 'Bajo la Ley de la Comisión de Compensaciones a Obreros, artículo 24, que provee que *no se podrá entablar procedimiento bajo dicha ley a menos que se informe del accidente* al patrono dentro de 30 días, tal notificación es esencial a la jurisdicción de la Comisión Industrial.' *Ridge Coal* v. *Industrial Commission,* 131 N. E. 637; 298 Ill. 532.

"En Michigan se ha sostenido que el dejar de notificar al asegurador dentro del período estatutario de la ocurrencia de un accidente a consecuencia del cual un obrero falleció algún tiempo después, de modo que la primera noticia que el asegurador tuvo de tal accidente fué después de la muerte, constituye un impedimento para recibir compensación. El caso fué uno en que un obrero de una compañía maderera abandonó el trabajo y se marchó para su casa quejándose de fiebre. Resultó luego que padecía de fiebre tifoidea y de ella murió a los pocos días. Después de su muerte los herederos alegaron y probaron que la tifoidea había sido adquirida tomando agua en el campamento donde trabajaba. La corte sostuvo que la omisión de notificar al asegurador dentro del límite estatutario le había privado de su derecho a disponer que su propio médico examinara al obrero y a revisar el tratamiento seguido por éste, y a investigar dentro de tiempo razonable si el accidente había realmente ocurrido en el curso del trabajo.

"El dejar de notificar al patrono que el empleado sufría de fiebre tifoidea o que ésta le causó la muerte, dentro de tres meses después de la ocurrencia, como requiere la ley, es un impedimento para re-

cibir compensación por la muerte del empleado.' *Johnson* v. *Berg-land Lumber Co.,* 203 N. W. 840, 231 Mich. 34.'' (Págs. 444–445.)

En dicho caso de Torres el tribunal entonces dijo:

''Creemos, como la Comisión, que si se autorizara a presentar reclamaciones por la muerte de un obrero alegando que había sido causada por un accidente del cual no se notificó nunca al Fondo del Seguro del Estado, o del cual se le notificó después del término prescrito por la ley, el Fondo no tendría una oportunidad justa para investigar los hechos del caso. El Fondo tiene un derecho estatutario a ser informado del accidente dentro de cinco días de su ocurrencia, ya por el informe del patrono o por la comparecencia del empleado ante el médico del Fondo.'' (Pág. 445.)

Esto, desde luego, debe interpretarse a la luz de la cuestión y de los hechos que la corte tuvo ante sí en el referido caso de Torres. Interpretado en esa forma, ello no significa que el derecho estatutario en cuestión no puede ser renunciado por el Administrador del Fondo del Estado. La sección 15 de la Ley de Michigan puede hallarse en el caso de *Ames* v. *Lake Independence Lumber Co.,* supra. Ésta lee así:

''Sección 15.—No se instruirá ni considerará ningún procedimiento de compensación por accidente bajo esta ley, a menos que el patrono sea notificado del accidente dentro del período de tres meses contado a partir de la fecha en que sucedió el mismo, y a menos que la solicitud de indemnización por tal lesión—solicitud que puede hacerse oralmente o por escrito—se haga dentro del período de seis meses contado a partir de la fecha del accidente.''

Podría admitirse que la sección 15 de la ley de Michigan y la sección 24 de la ley de Illinois son algo similares a la sección 5 de la ley de Puerto Rico en lo que a la cuestión que estuvo ante este tribunal en el caso de Torres se refiere. En lo que concierne a la cuestión que ahora está ante nos existe una diferencia vital entre el artículo 5 de nuestra ley (Leyes de Puerto Rico de 1935, págs. 251, 275) y secciones más o menos similares, interpretadas en los casos citados por este tribunal en el de *Torres* v. *Comisión Industrial,* supra, y por el recurrente en el recurso de autos.

La sección 13 dispone que todo patrono deberá presentar un informe escrito al Administrador del Fondo dentro del término de cinco días después de ocurrir un accidente. Provee además que:

"Los patronos que rehusaren o descuidaren hacer los informes requeridos por este artículo serán castigados por la corte municipal donde reside el patrono, con una multa que no excederá de cien (100) dólares"

El artículo 5 impone al obrero lesionado, durante el período de inhabilitación, el deber de dejarse tratar y examinar a horas y en sitios oportunos "por un médico competente designado por el Administrador; *Disponiéndose,* que si el Administrador no proveyera asistencia adecuada al obrero o empleado, éste podrá acudir ante la Comisión Industrial y ésta, previa investigación por un médico designado al efecto ordenará la asistencia que convenga al caso y el Administrador cumplirá con la orden de la Comisión". El párrafo 4 de ese artículo lee así:

"La negativa u oposición sin justa causa, del obrero o empleado a someterse al examen médico o tratamiento facultativo provisto por el Administrador surtirá el efecto de privarlo de su derecho a recibir compensación de acuerdo con esta Ley o entablar o seguir procedimiento de acuerdo con la misma para obtener tal compensación; *Disponiéndose,* que si el obrero o empleado no se presentare al médico dentro de un término que no excederá de cinco (5) días después de la ocurrencia del accidente para tratamiento facultativo, *ni explicare satisfactoriamente su demora al Administrador, éste podrá privarlo de su derecho a recibir compensación alguna,* pero no podrá negarse al obrero o empleado bajo ninguna circunstancia, la asistencia médica que a juicio del Administrador se considere necesaria hasta tratar de lograr su total restablecimiento; *Y disponiéndose, además,* que para apreciar y comprobar la incapacidad con que queda afecto el obrero o empleado, el Administrador, podrá compeler la comparecencia personal del lesionado por cuenta del Fondo del Estado."

En el presente caso no hubo "negativa u oposición" por parte del obrero lesionado, sin justa causa o de otra índole

"a someterse al examen médico o tratamiento facultativo provisto por el Administrador''. En su consecuencia no puede privársele de su derecho a indemnización en la teoría de tal ''negativa u oposición''.

█ El dejar el obrero lesionado de presentarse a examen dentro del término de cinco días después de ocurrir el accidente o de explicar la demora, no es un impedimento absoluto a que se reciba compensación. Evidentemente, es cuestión que cae dentro de la sana discreción del Administrador, para ser ejercitada de acuerdo con las circunstancias de cada caso específico.

█ El Administrador no trató de privar al obrero de su derecho a percibir compensación, ya por haber dejado de presentarse al médico para recibir tratamiento facultativo dentro del término de cinco días contado a partir de la fecha en que ocurrió el accidente o por haber dejado de ''explicar . . . . su demora''. El Administrador aparentemente quedó de un todo convencido con la explicación obvia revelada por los hechos incontrovertidos de su investigación. Es de presumirse que por igual motivo él no suscitó tal cuestión en el curso del procedimiento llevado a cabo ante la Comisión Industrial hasta después de ésta haber dictado su decisión y luego de este tribunal haber emitido su opinión en el caso de Torres. Quedaba a opción del Administrador ejercitar su derecho estatutario de privar al obrero lesionado de su derecho a indemnización o de privar a sus beneficiarios de su derecho a compensación. El Administrador renunció ese derecho al dejar de ejercitar el mismo, bien al tiempo de dictar su propia decisión o en el curso de la vista celebrada ante la Comisión.

El lenguaje de nuestro estatuto nos releva de la necesidad de revisar el razonamiento de la Corte Suprema de Utah en el primero de los casos citados por el recurrente: *Spring Canyon Coal Co. v. Industrial Commission*, supra.

█ La Comisión Industrial no cometió error al resolver que la cuestión relativa a la falta del obrero lesionado de in-

formar el accidente dentro del término de cinco días al ser presentada por primera vez en una moción de reconsideración, era demasiado tardía. Los párrafos segundo y tercero del inciso 5 del artículo 3 de la ley (leyes de 1935, págs. 265 y 267) leen así:

"Si el obrero o empleado dejare una viuda, padres, hijos legítimos. o ilegítimos, o hijos póstumos, fueran éstos o no naturales o adoptivos, o nietos, cualquiera de los cuales dependiera total o parcialmente para su subsistencia de lo que ganaba el obrero o empleado fallecido al tiempo de su muerte, recibirán una compensación de mil (1,000) dólares a tres mil (3,000) dólares que se graduará en atención a la capacidad económica del obrero o empleado fallecido y sus probabilidades de vida, de acuerdo con las reglas que deberá preparar el Administrador del Fondo del Estado, las que tendrán fuerza de ley después de aprobadas por la Comisión Industrial y el Gobernador, y promulgadas de acuerdo con la ley. Dicha compensación se distribuirá entre los parientes mencionados atendiéndose a la condición, necesidades, grado de parentesco y dependencia de cada uno, según se decida por el Administrador de acuerdo con los hechos.

"En defecto de las personas antes mencionadas, el padre o la madre de crianza, los hijos de crianza, o hermanos menores de quince años, o cualquiera que sea su edad, si fueren judicialmente declarados incapacitados por la corte correspondiente, que dependieran total o parcialmente de lo que ganaba el obrero o empleado fallecido recibirán una compensación de mil (1,000) a dos mil (2,000) dólares como máximum, y si fueren varias las personas con derecho a esta compensación, la misma se distribuirá entre ellas según lo disponga el Administrador."

█ La Comisión Industrial resolvió que el biznieto también era hijo de crianza y dependía para su sostenimiento de los salarios de su padre de crianza al tiempo de su muerte. De ello se desprende que el hijo de crianza como tal, tenía derecho a percibir indemnización y la Comisión acertadamente así lo resolvió. El error, de haberlo, al decidir que el hijo de crianza también tenía derecho a percibir indemnización como biznieto, no fué perjudicial.

*Debe confirmarse la resolución de la Comisión Industrial.*