ANTONIO GUZMÁN MUÑOZ, recurrente, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, ETC., demandada; FONDO DEL SEGURO DEL ESTADO, asegurador.

*Número:* 598    *Resuelto:* 18 de junio de 1962

*Benjamín Ortiz,* abogado del recurrente; *Donald R. Dexter, Carmen Ana Archeval* y *Felipe Benicio Sánchez,* abogados del Administrador del Fondo del Seguro del Estado.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Dávila.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Desde su redacción original, el artículo 5 de la Ley de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, 11 L.P.R.A. sec. 6, dispone en parte que "[l]a negativa u oposición sin justa causa, del obrero o empleado a someterse al examen médico o tratamiento facultativo provisto por el Administrador surtirá el efecto de privarlo de su derecho a recibir compensación de acuerdo con esta Ley o entablar o seguir procedimiento de acuerdo con la misma para obtener tal compensación; *Disponiéndose,* que si el obrero o empleado no se presentare al médico dentro de un término que no excederá de cinco (5) días después de la ocurrencia del accidente para tratamiento facultativo, ni explicare satisfactoriamente su demora al Administrador, éste podrá privarlo de su derecho a recibir compensación alguna, pero no podrá negarse al obrero o empleado bajo ninguna circunstancia, la asistencia médica que a juicio del Administrador se considere necesaria hasta tratar de lograr su total restablecimiento; . . ."(¹) La legislación anterior(²) no fijaba un término específico para que el obrero se

---

(¹)Mediante la Ley Núm. 405 de 11 de mayo de 1951 (Leyes, pág. 1059) se le adicionó un *Disponiéndose* a este artículo al efecto de que ". . . cuando el obrero hubiere probado a satisfacción su demora, el Administrador vendrá obligado a pagarle la compensación total o la incapacidad incluyendo las dietas por el tiempo que hubiere estado bajo tratamiento médico."

(²)Véanse, el artículo 9 de la Ley Núm. 19 de 13 de abril de 1916 (Leyes, págs. 51, 54); el artículo 5 de la Ley Núm. 10 de 25 de febrero de 1918 (Leyes, págs. 55, 61); y la sección 5 de la Ley Núm. 85 de 14 de mayo de 1928 (Leyes, págs. 631, 647.)

presentara a examen médico. En la Ley Núm. 78 de 5 de mayo de 1931 (Leyes, pág. 477), que enmendó la sección 5 de la Ley Núm. 85 de 14 de mayo de 1928 (Leyes, págs. 631, 647), es que se hace referencia a que si el obrero no se presentare a examen "dentro de *un término razonable* después de la ocurrencia del accidente" para recibir tratamiento, la comisión podría, *dentro de su discreción,* privarlo de su derecho a recibir indemnización alguna.

Íntimamente entrelazado con la disposición citada que requiere que el obrero se presente a examen médico está el artículo 13 de la vigente ley, 11 L.P.R.A. sec. 14, que impone al patrono la obligación de notificar la ocurrencia de cualquier accidente que sufra un obrero o empleado mediante la remisión de un informe escrito dentro del término de cinco días.([3])

En *Torres* v. *Comisión Industrial,* 55 D.P.R. 438, 443 (1939), dijimos que el propósito que anima el requisito de que el obrero comparezca a examen médico dentro del término de cinco días es informar al asegurador de la ocurrencia del accidente ofreciéndole así la oportunidad de investigarlo para determinar si efectivamente se trata de uno compensable bajo la ley. Y en *Montaner* v. *Comisión Industrial,* 56 D.P.R. 286, 295 (1940), añadimos que el incumplimiento de este requisito no es un impedimento absoluto a que se reciba compensación y que se trata de una cuestión que cae dentro de la discreción del Administrador para ser ejercitada de acuerdo con las circunstancias de cada caso específico.

Parece claro que, en adición a conceder al Administrador la oportunidad de investigar el accidente, el fin primordial de la disposición tiene que ser asegurarse de que el obrero

---

([3]) Al mismo efecto, véanse, la sección 22 de la Ley Núm. 85 de 1928, *supra;* el artículo 7 de la Ley Núm. 10 de 1918, *supra,* y el artículo 11 de la Ley Núm. 19 de 1916, *supra,* que concedía un término de diez días para ello.

reciba tratamiento adecuado para la lesión o daño recibido. En esta forma se evita que se prolongue el período de hospitalización y que las consecuencias del accidente sean mayores, reduciendo así tanto el gasto por asistencia médica como la compensación a que tendría derecho el lesionado. Este término de cinco días responde, pues, al deseo de no exponer al Fondo a reclamaciones ilegítimas o fraudulentas. ■

Aceptado el hecho de que los propósitos que se persiguen son los indicados, y teniendo en mente que la ley debe interpretarse liberalmente para lograr los propósitos del estatuto (Artículo 2 de la Ley de Compensaciones por Accidentes del Trabajo, supra, según enmendado por la Ley Núm. 94 de 22 de junio de 1957, Leyes, pág. 472, 11 L.P.R.A. (Supl. 1960, pág. 6)), es evidente que en ausencia de que la omisión del obrero o empleado a presentarse a examen y someterse a tratamiento médico haya causado perjuicios al Fondo, no puede negarse la compensación. Estos perjuicios existirían si se demostrara que *a*) la tardanza impidió al Fondo realizar una investigación adecuada para determinar si se trata de un accidente que proviene de cualquier acto o función inherente al empleo y ocurrido en el curso de éste; ([4]) y, *b*) el obrero o empleado no recibió un tratamiento adecuado y competente, una vez conocida la lesión, y por ello, se extendió indebidamente el período de incapacidad o se agravó la lesión. Véase, Larson, *Workmen's Compensation Law*, vol. 2, sec. 78.32. También es preciso considerar que en

---

([4]) Idéntica posición hemos adoptado cuando una compañía aseguradora ha interpuesto como defensa la falta de notificación. *Lafontaine* v. *Municipio*, 79 D.P.R. 583 (1956); *Landol* v. *Colón*, 78 D.P.R. 602 (1955); *Faulkner* v. *Nieves*, 76 D.P.R. 434 (1954); cfr. *Cuebas Fernández* v. *P. R. American Ins. Co.* 85 D.P.R. 626 (1962). *A fortiori* no podemos sostener con mayor rigor esta disposición que releva de responsabilidad cuando se trata de una ley de beneficio social. Cuando se trata de una póliza de responsabilidad pública exigida por estatuto—seguro obligatorio—la falta de notificación no se reconoce como defensa, porque el propósito legislativo es la protección del público. Anotación, 31 A.L.R.2d 645 (1953).

muchas ocasiones el obrero no está consciente de que ha recibido una lesión por no tratarse de un trauma físico, como una herida o un golpe, y que solamente se da cuenta de ello cuando comienzan a manifestarse los resultados del accidente. En tales casos no puede exigirse que invariablemente se presente a examen médico dentro de los cinco días del acaecimiento del accidente, sino desde que, mediante cuidado y diligencia razonable, pueda determinarse que se sufrió una lesión o accidente compensable. *Clark* v. *A. Tucker Electric Co.*, 345 P.2d 620 (Kan. 1959); *Williams* v. *Dept. of Labor & Industries*, 277 P.2d 338 (Wash. 1954); Larson, *op. cit.*, sec. 78.41. En cuanto a enfermedades ocupacionales, véase, Anotación, *When limitation period begins to run against cause of action or claim for contracting of disease*, 11 A.L.R.2d 277, 297–311 (1950).

Consideremos ahora los hechos del presente caso. Para fines del mes de marzo de 1960, el recurrente Antonio Guzmán Muñoz, quien estaba a cargo de un almacén de Sucesores de Abarca, fue requerido para que removiera unos hierros viejos que se encontraban depositados en el patio del almacén. Para esta operación se utilizaba una grúa, que ese día manipulaba el recurrente debido a la ausencia del operador regular. Mientras recogía unos hierros se zafó el puntal de la grúa y para evitar que se cayera y se partiera, Guzmán haló fuertemente la palanca. Debido al esfuerzo realizado, sintió un fuerte dolor en el pecho, que atribuyó a gases. Sin embargo, por espacio de dos semanas continuó sintiendo el dolor, por lo cual solicitó vacaciones de su supervisor inmediato, quien le indicó que ello era innecesario por estar en el período de Semana Santa. Le indicó además que probablemente tenía gases, y le recomendó que tomara limón con soda. Los dolores se acentuaron, y en la mañana del día 14 de abril fue recluido en el Hospital Pavía.

Estuvo recluido en dicho hospital sometido a tratamiento médico hasta el día 7 de mayo. Se le mantuvo incomuni-

cado y sólo se permitía la presencia de su esposa en la habitación. No admitieron visitas. Al ser dado de alta se le instruyó para que permaneciera recluido en cama durante dos semanas adicionales, y durante este período sólo se le aconsejó levantarse una hora por las mañanas y otra hora por las tardes.

El día 6 de junio siguiente dirigió una comunicación escrita al Administrador del Fondo del Seguro del Estado reclamando compensación por el accidente que había sufrido a fines de marzo. La notificación se efectuó, por tanto, más de dos meses después de ocurrido el accidente. Se desprende que había sufrido una trombosis coronaria que le causó un infarto del miocardio. Al ser interrogado sobre el motivo de su demora en entablar la reclamación de compensación explicó que hasta que se le recluyó ignoraba "lo que tenía", y luego, estaba físicamente impedido de hacerlo, pues no sólo estuvo hospitalizado, sino que se le recomendó reposo absoluto. Como consecuencia del accidente relatado ha quedado permanentemente incapacitado para trabajar.

La Comisión Industrial determinó que se trataba de un accidente cubierto por la ley, pero denegó la compensación reclamada por entender que el recurrente no había sido diligente ni había explicado satisfactoriamente su demora en presentarse para tratamiento médico. Accedimos a revisar esta resolución. ■

De los autos aparece que el conocimiento tardío que tuvo el Administrador no le impidió realizar la investigación pertinente para determinar las circunstancias que rodearon el accidente. Como cuestión de hecho, la prueba de dicho funcionario en la vista ante la Comisión Industrial consistió en las copias de las declaraciones juradas que se le tomaron al reclamante y a tres testigos durante el curso de la investigación que se efectuó los días 21 y 23 de julio de 1960. A pesar del tiempo transcurrido no se le causó perjuicio alguno

por la tardanza,(⁵) ya que el aspecto de compensabilidad pudo ser indagado sin obstáculos. Por otro lado, la prueba demuestra que el recurrente estuvo sometido al tratamiento indicado y adecuado para la lesión que presentaba. No se ha insinuado siquiera que no recibió la atención profesional debida, ni que el tratamiento a que fue sometido agravó las consecuencias del accidente, que como hemos dicho, produjo la incapacidad permanente del obrero. Siendo ello así, y habiendo la Comisión fallado que el accidente era compensable, erró al negar la compensación por la supuesta demora en que incurrió el obrero, ya que con ello ningún perjuicio se causó al Fondo. Fallamos que, consideradas todas las circunstancias que concurren en el presente caso, la tardanza quedó explicada en forma satisfactoria.

*Se revocará la resolución dictada por la Comisión Industrial en 27 de enero de 1961, y se devolverá el caso con instrucciones de compensarlo.*

---

(⁵) En 7 de octubre de 1960 se le escribió al obrero ratificándole la negativa del Administrador a conceder compensación porque la tardanza "privó a esta Agencia de la oportunidad de poder determinar si la condición que usted presentaba guardaba o no relación con su alegado accidente." No comprendemos esta actitud de dicho funcionario pues ya desde julio anterior tenía las declaraciones de los testigos de las cuales surge, como en definitiva lo determinó la Comisión Industrial, que se trataba de un accidente del trabajo.