Colón Birriel, Juez Ponente
*950 TEXTO COMPLETO DE LA SENTENCIA
I
El recurrente, Administrador de la Corporación del Fondo del Seguro del Estado ("el Fondo") interesa la revocación de una resolución emitida el 12 de marzo de 1998, notificada de su copia a los interesados el 31 de ese mes y año, mediante la cual la Comisión Industrial de Puerto Rico ("Comisión") revocó su decisión que le denegó a la recurrida Casilda Serrano Sierra ("la recurrida") una incapacidad "de 5% por pérdida de las funciones fisiológicas del hombro izquierdo en o más arriba del codo".
Mediante nuestra "Resolución" de 26 de octubre de 1998, notificada en esa fecha le concedimos término a la recurrida para mostrar causa por la cual la resolución recurrida no debía ser revocada, quien ha comparecido. Resolvemos con el beneficio de la copia certificada del expediente administrativo obrante en la Comisión Industrial y de las comparecencias de las partes. Veamos.
n
El 22 de noviembre de 1998, la recurrida presentó ante el Fondo un "Informe Patronal" de accidente alegando, entre otros, que en mayo de 1993 en horas de la tarde, mientras trabajaba en R.J. Reynolds en Yabucoa, al estar bajando una caja de 60 cartones de cigarrillos que estaban estibadas en paletas, sintió un fuerte dolor en el brazo izquierdo. El 23 de mayo de 1994, luego de haber recibido el máximo beneficio de tratamiento, se le dió de alta del Fondo sin incapacidad. Se le diagnóstico "Left Shoulder Strain", relacionada con su empleo y, además, le fue diagnosticado "Degenerative Joint disease of the left Shoulder (ANR) II y 11 Left CTS 2dary to diabetes mellitus (ANR)II", no relacionados a su empleo. 
El 8 de junio de 1994, la recurrida apeló ante la Comisión la decisión del Fondo. En vista médica celebrada el 12 de septiembre de 1994, notificada el 29 de septiembre, la Comisión resolvió fijarle una incapacidad de 5% por la pérdida de las funciones fisiológicas de su brazo izquierdo en o más arriba de su codo. Se ordenó, además, referir el caso al Fondo para emitir "decisión institucional sobre condición cambios degenerativos del hombro izquierdo y carpal túnel syndrome izquierdo". 
Posteriormente, luego de realizada la investigación por el Fondo, el 8 de diciembre de 1998, éste notifica su decisión sobre "Compensabilidad y Tardanza". Decidió, que conforme al Artículo 5 de la Ley de Compensaciones por Accidentes deL Trabajo, la recurrida no tenía derecho a recibir compensación alguna por haber incurrido en "Tardanza", tardanza que agravó su condición. No obstante, tenía derecho a recibir tratamiento médico. 
Así las cosas, la recurrida apeló la decisión del Fondo a la Comisión, celebrándose vista pública el 3 de marzo de 1998. El 12 de marzo, la Comisión emitió resolución, la que notificó a las partes el 31 de marzo. Mediante su dictamen revocó la decisión del Fondo, notificada el 8 de diciembre de 1994, y le fijó a la recurrida "una incapacidad de un 5% por la pérdida de las funciones fisiológicas en o más arriba del codo de sus funciones". Resolvió, además, que en cuanto a la condición del CTS bilateral, "SE REFIERE a la obrera a nuestro cirujano de MANO para evaluación y recomendaciones sobre relación causal". Por último, en cuanto a la condición de artritis, declaró con lugar el desistimiento voluntario de la recurrida. 
El 15 de abril de 1998, el Fondo solicitó reconsideración. Mediante su "Resolución" de 10 de julio de 1998, notificada el 14 de julio, la Comisión confirmó su "Resolución" de 12 de marzo de 1998. 
*951 Inconforme, el Fondo recurre imputándole a la Comisión haber incurrido en dos (2) errores, a saber: (1) no basar su decisión en la totalidad de la prueba obrante en el expediente, y (2) fijar compensación en un caso de tardanza, sin cumplirse con los requisitos del derecho positivo.
ni
Discutiremos los errores en conjunto. Veamos.
El Artículo 5 de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, Ley Número 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. sec. 6, desde su redacción original dispone en su parte pertinente, como sigue:
"Durante el período de inhabilitación, el obrero o empleado lesionado o enfermo, bajo las circunstancias que cubre este Capítulo, se dejará tratar y examinar a horas y en sitios oportunos por un médico competente designado por el Administrador; Disponiéndose que si el Administrador no proveyera asistencia adecuada al obrero o empleado, éste podrá acudir ante la Comisión Industrial y en previa investigación por un médico designado al efecto, ordenará la Asistencia que convenga al caso y el Administrador cumplirá con la orden de la Comisión.

El obrero o empleado lesionado tendrá derecho a designar por su cuenta un médico o un cirujano para que presencie su examen o le preste tratamiento.

La negativa u oposición sin justa causa del obrero o empleado a someterse al examen médico o tratamiento facultativo provisto por el Administrador surtirá el efecto de privarlo de su derecho a recibir compensación de acuerdo con este Capítulo o entablar o seguir procedimiento de acuerdo con el mismo para obtener tal compensación; Disponiéndose, que si el obrero o empleado no se presentare al médico dentro de los cinco (5) días laborables después de la ocurrencia del accidente para tratamiento facultativo, ni explicare satisfactoriamente su demora al Administrador, éste podrá privarlo de su derecho a recibir compensación alguna, pero no podrá negarse al obrero o empleado bajo ninguna circunstancia la asistencia médica que a juicio del Administrador se considere necesaria hasta tratar de lograr su total restablecimiento."

En Torres v. Comisión Industrial, 55 D.P.R. 438 443 (1939), nuestro Tribunal Supremo señaló que el propósito que anima el requisito de que el obrero comparezca a examen médico dentro del término de cinco días es informar al asegurador de la ocurrencia del accidente ofreciéndole así la oportunidad de investigarlo para determinar si efectivamente se trata de uno compensable bajo la ley. Y en Montaner v. Comisión Industrial, 56 D.P.R. 286, 295 (1940), ese ilustrado foro añadió que el incumplimiento de ese requisito no es un impedimento absoluto a que se reciba compensación y que se trata de una cuestión que cae dentro de la discreción del Administrador para ser ejercitada de acuerdo a las circunstancias de cada caso específico.
En adición a conceder al Administrador la oportunidad de investigar el accidente, el fin primordial del Artículo 5, supra, tiene que ser el de asegurarse de que el obrero reciba tratamiento adecuado para la lesión o daño sufrido. En esta forma se evita que se prolongue el período de hospitalización y que las consecuencias del accidente sean mayores, reduciendo así tanto el gasto por asistencia médica como la compensación a que tendría derecho el lesionado. Este término de cinco días responde, pues, al deseo de no exponer al Fondo a reclamaciones legítimas o fraudulentas. Muñoz v. Comisión Industrial, 85 D.P.R. 700, 703-704.
Aceptado el hecho de que los propósitos que se persiguen son los indicados, y teniendo en mente que la ley debe interpretarse liberalmente para lograr los propósitos del estatuto (Artículo 2 de la Ley de Compensaciones por Accidentes del Trabajo, supra, según enmendado por la Ley Núm. 94 de 22 de junio de 1997, Leyes, pág. 472, 11 L.P.R.A. (Supl. 1960, pág. 6), es evidente que en ausencia de que la omisión del obrero o empleado a presentarse a examen y someterse a tratamiento médico haya causado perjuicios al Fondo, no puede negarse la compensación. Estos peijuicios existirían si se demostrara que: a) la tardanza impidió al Fondo realizar una investigación adecuada para determinar si se trata de un accidente que proviene de cualquier acto o función inherente al empleo y ocurrido en el curso de éste; y b) el obrero o empleado no recibió un tratamiento adecuado y competente, una vez. conocida la lesión, y por ello, se extendió indebidamente el período de incapacidad o se agravó la *952 lesión. También es preciso considerar que en muchas ocasiones el obrero no está consciente de que ha recibido una lesión por no tratarse de un trauma físico, como una herida o un golpe, y que solamente se da cuenta de ello cuando comienzan a manifestarse los resultados del accidente. En tales casos no puede exigirse que invariablemente se presente a examen médico dentro de los cinco días del acaecimiento del accidente, sino desde que, mediante cuidado y diligencia razonable, pueda determinarse que se sufrió una lesión o accidente compensable. Guzmán Muñoz v. Comisión Industrial, supra, a las págs. 704-705.
En el caso ante nuestra consideración, el Fondo determinó que la tardanza de la recurrida en informar su accidente laboral agravó su condición. El accidente ocurrió en mayo de 1993 y se informó el 22 de noviembre de 1993, es decir unos seis meses después de su ocurrencia. Al agravarse su condición por la tardanza en informar el accidente, concluyó el Fondo que no tenía derecho a compensación.
Toda vez que el patrono de la recurrida, CTS Caribbean Temporary se negó a llenar la "Declaración Voluntaria del Lesionado", ésta tuvo que llenar el formulario titulado "Informe Cuando el Patrono se Niega a Informar el Accidente." 
Surge de la declaración jurada prestada por la recurrida el 17 de mayo de 1994, ante el investigador del Fondo que ésta declaró entre otras cosas, lo siguiente: 

"Pregunta: ¿Cuándo ud. advino al conocimiento de que sus molestias en el brazo o hombro izquierdo eran producto de su trabajo?

Contestó: Inmediatamente, pero no me queje.

Pregunta: ¿Conocía ud. del FSEylos servicios que brinda?

Contestación: Sí.

Pregunta: Razones que ud. tuvo para suspender sus labores en mayo 93.

Contestación:, Porque eso fue un ajoro que hubo en la compañía y eso fue los días que me dieron de trabajo.

Pregunta: ¿Visitó ud. en algún momento el Dispensario de la compañía por alguna otra condición?

Contestación: No."

Surge además, que los péritos médicos del Fondo concluyeron o determinaron que la demora de la recurrida en informar su accidente oportunamente agravó su condición. Es el informe pericial del Dr. Burgos, perito del Fondo, que sirve de base para la decisión del Fondo de 8 de diciembre de 1994, para concluir que dicha demora agravó la condición de la recurrida.
Conforme a la prueba desfilada en la vista pública celebrada ante la Comisión el 3 de marzo de 1998, notificada el 31 de marzo, se desprende de la opinión del Dr. Frank Aponte Toro, perito de la Comisión, que de la pmeba médica privada presentada por la recurrida no hubo evaluación para la condición del hombro izquierdo, sí se hablaba de diabetes mellitus y de espalda baja. Por su parte, la Dra. Madeline Delgado, perito del Fondo, expresó que el primer documento médico donde existe evaluación del hombro izquierdo de la recurrida es de fecha 6 de octubre de 1993, es decir, unos cinco meses luego de la ocurrencia del accidente del trabajo en mayo de 1993. Testificó, además, que las limitaciones que se encontró en la vista pública celebrada, fueron producidas por razón de la recurrida no haberse tratado a tiempo. Es decir, su período de recuperación se prolongó por razón de no haberse tratado su condición oportunamente.
Hemos examinado la Resolución en Reconsideración de la Comisión de 10 de julio de 1998, en lo pertinente, sus determinaciones de hechos número 3,4, 5 y 6, las que se leen como sigue:

*953
"3. La obrera se reportó al Fondo del Seguro del Estado el 18 de noviembre de 1993. Es decir, seis meses de haber ocurrido su accidente laboral en la Winston. A los (5) ó seis (6) días fue al CDT y le dieron tratamiento para las piernas, infección pélvica y área lumbar. (No hay evidencia de que fuese atendida por su hombro izquierdo).

4. La obrera lesionada fue evaluada por lafisiatra del Asegurador, quien recomendó terapias para el hombro. Al final de ese tratamiento, el 23 de mayo de 1993, la señora Serrano es dada de alta sin incapacidad (AS) por su condición de strain del hombro izquierdo por no encontrar hallazgos médicos que lo justifiquen.

5. En vista pública el testimonio pericial tanto delDr. Frank Aponte, asesor médico de la Comisión Industrial y el de la Dra. Madeline Delgado, asesor médico del Asegurador fue unánime a los efectos de que ante el Fondo del Seguro del Estado la condición del hombro no dejó incapacidad y que al examen de la vista pública tiene residuales limitantes que ameritan ser compensadas en un cinco (5%) porciento de las funciones fisiológicas en o más arriba del codo izquierdo.

6. Por último, en la vista médica del 12 de septiembre de 1994, el peritaje médico fue unánime; Dr. Rafael Rosa por la Comisión Industrial y la Dra. Ivette Oyóla, médico asesor del Fondo del Seguro del Estado a los fines de recomendar incapacidad a la obrera de un cinco (5%) porciento a base de que presentaba dolor a la palpación en el hombro izquierdo y discreta limitación en los movimientos en abducción y extensión a últimos grados."

Hemos examinado además, el contenido de una comunicación de 10 de mayo de 1996, obrante en el expediente de la Comisión suscrita por Gerardo de León Vázquez dirigida a la Comisión. En la referida comunicación se le informa a la Comisión, entre otros, que la reclamación de la recurrida era una fraudulenta; ésta se encontraba en buen estado de salud, trabajando activamente y que para la fecha o período de tiempo en que la recurrida reclama su incapacidad estaba trabajando activamente en un negocio conocido como "El Lucas Night Club" junto a su pareja consensual Israel de León Vázquez.
Por otro lado, es principio jurisprudencial trillado que las conclusiones e interpretaciones de ios organismos administrativos especializados merecen gran consideración y respeto, en vista de la vasta experiencia y conocimiento que poseen los mismos. Los tribunales apelativos deben ser cautelosos al intervenir con la apreciación de la prueba que realice dicho organismo cuando sus determinaciones se encuentren fundamentadas por prueba amplia y sustancial. En estos casos, la revisión judicial debe limitarse a determinar si el referido foro actuó de manera arbitraria e ilegal, o en una forma tan irrazonable que su actuación constituya un abuso de discreción. Metropolitana S.E. (ATRIUM PLAZA) y Otros v. Asociación de Residentes de la Avenida San Patricio y Areas Circundantes, Inc., Op. del 10 de abril de 1995, 95 J.T.S. 39; Roberto E. Fuentes y Otros v. A.R.P.E., Op. 17 de diciembre de 1993, 93 J.T.S. 165; Juan Agosto Serrano v. Fondo del Seguro del Estado, Op. del 8 de marzo de 1993, 93 J.T.S. 37; Asociación de Doctores v. Colegio de Optómetras de Puerto Rico, Op. del 1 de febrero de 1993, 93 J.T.S. 12; Viajes Gallardo v. Homero Clavell, Op. del 30 de junio de 1992, 92 J.T.S. 90; y Cruz M. Silva Rodríguez v. Administración de los Sistemas del Retiro, Op. del 17 de abril de 1991, 91 J.T.S. 39.
Del estudio que hemos realizado al recurso, al escrito de oposición de la recurrida, al expediente de la Comisión, conforme al estado de derecho expuesto, resolvemos que los errores imputados a la Comisión fueron cometidos, por lo que expedimos el auto solicitado y, en su consecuencia, revocamos la Resolución de la Comisión Industrial de Puerto Rico de 12 de marzo de 1998, notificada el 31 de dicho mes y año, que le fijó a la recurrida un 5% por la pérdida de las funciones fisiológicas en o más arriba del codo del hombro izquierdo.
Lo pronunció el Tribunal y lo certifica la señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General