No. 41,562

ROBERT A. CLARK, *Appellant*, v. A. TUCKER ELECTRIC COMPANY and ZURICH INSURANCE COMPANY, *Appellees*.

(345 P. 2d 620)

Opinion filed November 7, 1959.

*Craig Irwin* and *Robert R. Irwin*, both of Topeka, argued the cause and were on the briefs for the appellants.

*Herbert A. Marshall*, of Topeka, argued the cause for the appellees and *Allen Meyers, Philip C. Gault* and *Doral H. Hawks*, all of Topeka, were with him on the briefs for the appellees.

The opinion of the court was delivered by

JACKSON, J.: This is an appeal by the claimant in a workmen's compensation case from an adverse decision of the district court which set aside an award made by the workmen's compensation commissioner.

In making his decision, the learned judge of the district court followed his commendable, usual practice of preparing a memorandum opinion. The facts of this case are not in dispute and are carefully set out in the opinion of the trial judge. Therefore, we are including almost the whole of the opinion herein:

"MEMORANDUM OPINION OF JUDGE

"This case is an appeal from an award made by the Workmen's Compensation Commissioner. Counsel appeared by agreement on January 29, 1959, presented their respective contentions and submitted the matter for decision. The case has since been under advisement.

. . . . . . . . . . . .

"Under the applicable statute (G. S. 1957, 44-556) an appeal was taken in this case by the employer and its insurance carrier. In this Court the appeal is to be determined upon questions of law and fact as presented and shown by a transcript of the evidence and proceedings as presented, had and introduced before the commissioner. From such record the following findings are made:

"1. Claimant received an accidental injury to his right shoulder as a result of a fall from a 12 foot scaffold while in the employ of the respondent as a journeyman electrician and while working on a job in the Allen Field House on Wednesday, December 1, 1954. His average weekly wage at the time of such injury was $120. Claimant rested briefly after his fall and continued to work the remainder of that day and week and all of the following week before seeing a doctor.

"2. For several days following his injury claimant experienced difficulty in sleeping because of pain in his right shoulder and the pain bothered him while at work. On December 11, 1954 he went to Dr. E. A. McClintock with his complaints and from that date was under said Doctor's care until May 26, 1956, on which date he was released, not as cured, but as having received the maximum benefits from the treatments which had or could at that time be given.

"3. While under Dr. McClintock's care, claimant received 28 diathermy treatments and seven injections and purchased and took the drugs prescribed. He also did exercises in his basement designed to aid him in raising his right arm. When claimant was released, claimant did not inquire nor did his Doctor tell him whether claimant did or did not have a permanent disability, but claimant believed from what the Doctor had said, that in time and with exercise his condition would continue to improve.

"4. On January 6, 1955, claimant was laid off by respondent because he could not do overhead work and he next found employment sometime in March, 1955. During said interval while he was not working, claimant made no claim for unemployment benefits.

"5. On January 10, 1955 claimant filed his claim for compensation with respondent.

"6. From March 1955 up to the time of the hearing before the Commissioner on November 14, 1958, claimant had employment in his trade as a journeyman electrician. However, during the interval between March 1955 and about January, 1958, claimant was doing the kind of work which for the most part did not require him to reach overhead.

"7. At the time claimant finished treatments and was released from the care of Dr. McClintock, his arm was not bothering him at night but during the day it was sore. From this time until about January 1958 the arm was better and did not bother claimant very much but it was still sore. In January 1958 claimant began work which required him to have his arms over his head most of the time and by February 8, 1958, he was beginning to have the sort of shoulder pains at night which had occurred in the days shortly following the accidental injury.

"8. On February 8, 1958, claimant went to Dr. McClintock again and found that he had a permanent injury but that the Doctor could do nothing for it. That the disability consisted in limited motion of the right arm above the shoulder level and the Doctor estimated the extent of such disability at 15%.

"9. On March 20, 1958, claimant filed his request for a hearing before the Commissioner, notice of which was served on the respondent about a week later.

"10. Claimant was later examined by Dr. Orville R. Clark for the respondent and on August 23, 1958, Dr. Clark made his report which largely confirmed Dr. McClintock's findings. Dr. Clark estimated the extent of disability at 15 to 20%. Both Doctors found the disability to have been the result of the accident which occurred December 1, 1954.

"11. Between December 1, 1954, and November 14, 1958, claimant received no other injury to his person.

"12. Respondent and the Insurer had paid medical expense of $118 to Dr. McClintock and $40.90 to Blaylock Drug Store prior to the November 14, 1958, hearing before the Commissioner. The only medical expense incurred by claimant, not included in the above items, is the sum of $3.00 due Dr. McClintock for the office call of February 8, 1958. No other compensation has been paid by respondent or the insurer.

"13. Claimant was under no disability, mental or physical, which pre-

vented him from having his claim set for hearing before the Commissioner within three years from December 1, 1954, the date of his accidental injury. However, on and immediately prior to December 1, 1957, claimant's arm was not bothering him particularly, he was sleeping well and he did not then know he had any permanent disability.

## "Conclusions

"1. The period within which a claimant must have his claim set for hearing before the Commissioner begins to run against such claimant from the date of his accidental injury. (G. S. 1949, 44-535)

"2. Although the statute is silent as to the time limit within which a claim must be set for hearing, the Supreme Court of this State has held that under ordinary circumstances three years from the date of an accidental injury is 'more than reasonable for such purpose where quick, easy and inexpensive service is expected and designed.' (*Cruse v. Chicago, R. I. & P. Rly. Co.*, 138 K. 117; also 4 K. L. R. 329.

"3. The findings made in the case now being considered do not in my judgment warrant the conclusion that the circumstances surrounding claimant's injury were of such an extraordinary character as to warrant an extension of the time, within which he was privileged to have his claim set for hearing before the Commissioner, beyond the above mentioned reasonable time of three years from the date of injury.

"4. The fact that claimant did not discover that he had a permanent disability prior to the expiration of the above mentioned three year period, would not toll the running of such period under the circumstances disclosed by the record in this case as shown by the findings hereinabove made. (Though not directly in point, see: *Rutledge v. Sandlin*, 181 K. 369; *Johnson v. Skelly Oil Co.*, 180 K. 275; and 6 K. L. R. 490)

"Before concluding these findings and conclusions, two comments and supplemental findings in connection therewith, should be made; (1) Claimant's counsel sought, before the Commissioner and through the claimant as a witness, to show that had claimant asked that his claim be set for hearing on or just prior to December 1, 1957, claimant would have received nothing *because he did not then have a permanent disability.* For this reason such counsel contended that claimant should be given a few months leeway beyond the recognized three year limit. Needless to say, if the injury in question caused the permanent partial disability discovered in February of 1958, such disability would, on proper medical examination, have been discovered on or prior to December 1, 1957. (2) Although claimant suffered insufficient discomfort after May 26, 1955, to prompt him to go to his Doctor, still he did have a 'sore' arm most, if not all, of the time before he began the overhead work which sent him to the Doctor in February, 1958. Claimant had filed his claim on January 10, 1955, and had been interviewed at or after this time by personnel in the Commissioner's Office. Claimant knew the respondent was under the Workmen's Compensation Act and had been asked by respondent's counsel to discuss his claim. Claimant also knew or assumed that respondent had paid claimant's medical expense.

"In view of the above findings and conclusions and the comment thereon, the award of the Commissioner must be set aside and the claim for compensa-

tion, other than the medical expense heretofore paid, is denied. Commissioner's fees and expenses were assessed by the Commissioner against the respondent and insurer and this is affirmed, if such be required. The costs of the appeal are assessed against the claimant.

"Signed and dated at Lawrence, Kansas, on February 28, 1959."

From the above opinion it will be seen that the district court based its denial of the award upon the rule announced in the case of *Cruse v. Chicago R. I. & P. Rly. Co.,* 138 Kan. 117, 23 P. 2d 471, setting up as a normal test a three year limitations requirement for the hearing of a written claim for compensation after it has been filed under the statute. The court recognizes that the three year period was not a hard and fast rule as it has been "engrafted" upon the statute in the opinion of the Cruse case (See second paragraph of conclusion 4, above). It would appear also that the court's attention was not directed by counsel to the sequel to the above opinion appearing in *Cruse v. Chicago R. I. & P. Rly. Co.,* 140 Kan. 704, 38 P. 2d 672. This opinion deals with an appeal by the claimant after a new hearing before the workmen's compensation commissioner. On the new appeal it appeared that claimant in that case had not in fact filed a claim for compensation on June 13, 1929, as erroneously stated in the former opinion. The last appeal from the decision denying compensation was based upon a failure of claimant to comply with the provision of the act now appearing as G. S. 1957 Supp. 44-520a. The decision of the district court was affirmed on that basis. The court did not reverse the "three year" rule announced in its former opinion, but referring to its former opinion said:

"With respect to that the court held the proceedings before the compensation commissioner should be commenced within a reasonable time, and expressed the view that ordinarily three years from the date of the accident would be a reasonable time, but this might be varied by the facts of a particular case. The judgment of the trial court was reversed, leaving 'the matter just where it was before the commission acted upon the motion to dismiss'."

We would point out the differences in the case now before the court from the facts in the Cruse case. The written claim for compensation was timely filed, finding No. 5 above, and compensation was paid when the medical bills were paid by the employer, finding No. 12 above (*Wolgamott v. Vinegar Hill Zinc Co.,* 151 Kan. 374, 99 P. 2d 755). In the first Cruse opinion referred to above, it was assumed that a claim had been filed, but certainly no compensation had been paid.

It will be noted that in this case, the date of the payment of the

compensation must have been less than three years before the time appellant asked to have the case set down for hearing. In finding No. 2 it is shown that appellant was treated by Dr. McClintock as late as May 26, 1955, and on March 20, 1958, he filed his request for hearing before the commissioner of his claim filed January 10, 1955. We direct attention to the fact that payment of compensation has always suspended the running of the statutory time for filing written claim for compensation under the various forms of the statute now appearing as G. S. 1957 Supp. 44-520a.

It may be noted further that in fixing its rule of "laches" at the period of three years in the opinion of the Cruse case, the court relied upon "the old law" prior to the re-enactment of the workmen's compensation act in 1927, and the limitation as to the death of a workman found in the older version of the present section 44-520a. The provision for a three year limitation has now been changed to five years, but does not apply to the case at bar.

We do not fully understand the reasoning of the trial judge in the second paragraph of conclusion of law No. 4, *supra.* The court found Clark had suffered a permanent partial disability from the accident involved in this case, finding No. 10, *supra.* On the whole record, it would certainly appear that Mr. Clark was not a malingerer.

However, it must be remembered that the employer could call up the claim for hearing just as a defendant in the district court may insist that a case pending against him be heard (Rule 51-3-5 of the workmen's compensation commissioner filed in office of the revisor of statutes).

In the Cruse case the application of the three year limitation rule was assigned first to the discretion of the commissioner. The commissioner in our case made an award in claimant's favor but we do not here hold that the district court might not review that matter on appeal. The court is of the opinion that the three year limitation of the Cruse case—which is not found in the statute— should not be invoked where a timely written claim for compensation has been filed and compensation has been paid within three years of the time when claimant requests a hearing on his claim.

The judgment of the district court is reversed and remanded to the district court for further proceedings consistent with the views expressed in this opinion. It is so ordered.

PRICE, J., dissents.