ANTONIO GUZMÁN MUÑOZ, Petitioner, *v.* INDUSTRIAL COMMISSION OF PUERTO RICO, ETC., Respondent; STATE INSURANCE FUND, Insurer.

No. 598. Decided June 18, 1962.

*Benjamín Ortiz* for petitioner.   *Donald R. Dexter, Carmen Ana Archeval,* and *Felipe Benicio Sánchez* for the Manager of the State Insurance Fund.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Dávila.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

Since its original enactment § 5 of the Workmen's Accident Compensation Act, No. 45 of April 18, 1935, 11 L.P.R.A. § 6, provides in part that "The refusal or objection of a workman or employee, without just cause, to submit to the medical examination or professional treatment provided by the Manager shall deprive him of his right to receive compensation under this Act or to institute or bring proceedings hereunder to recover such compensation; *Provided,* That should the workman or employee fail to present himself to the physician for professional treatment within a period of not more than five (5) working days after the accident occurs, and fails to explain his delay satisfactorily to the Manager, the said Manager may deprive him of his right to receive any compensation, but under no circumstances can the workman or employee be denied such medical attendance as, in the judgment of the Manager, may be deemed necessary in endeavoring to bring about his complete recovery."[1] The former legislation[2] did not fix a specific period within which the workman should present himself for medical examination. In Act No. 78 of May 5, 1931 (Sess. Laws, p. 476), which amended § 5 of Act No. 85 of May 14, 1928 (Sess. Laws, p. 630, at 646), it is provided that if the laborer shall not present himself for examination "within *a reasonable time* after the accident" to receive medical treatment, the Com-

---

[1] By Act No. 405 of May 11, 1951 (Sess. Laws, p. 1058) a provided clause was added to this section to the effect that "...when the workman has satisfactorily explained his delay, the Manager shall be under obligation to pay him the total compensation or compensation for the disability, including per diems to such time as he may have been under medical treatment."

[2] See § 9 of Act No. 19 of April 13, 1916 (Sess. Laws, p. 51, at 54); § 5 of Act No. 10 of February 25, 1918 (Sp. Sess. Laws, p. 54, at 60); and § 5 of Act No. 85 of May 14, 1928 (Sess. Laws, p. 630, at 646).

mission could, *in its discretion*, deprive him of the right to receive compensation.

Section 13 of the existing Act, 11 L.P.R.A. § 14, which makes it the duty of the employer to notify the occurrence of any accident sustained by a workman or employee by filing a written report within a period of five days,[3] is intimately connected with the provision cited requiring the laborer to present himself for medical examination.

In *Torres* v. *Industrial Commission*, 55 P.R.R. 425, 430 (1939), we said that the purpose of the requirement that the workman report for medical examination within a period of five days is to inform the insurer of the occurrence of the accident, and thus give it an opportunity to investigate in order to determine whether it is actually compensable under the law. And in *Montaner* v. *Industrial Commission*, 56 P.R.R. 272, 280 (1940), we added that the failure to comply with this requirement is not an absolute bar to recovery, and that it is a matter within the discretion of the Manager to be exercised in accordance with the circumstances of each particular case.

■■ It seems clear that, in addition to giving the Manager an opportunity to investigate the accident, the main purpose of the provision must be to make sure that the workman receives proper medical treatment for the injury or damage sustained. This prevents that the hospitalization period be prolonged and that the consequences of the accident be greater, thereby reducing the medical expenses as well as the compensation to which the injured would be entitled. It is therefore the purpose of this five-day period to protect the Fund from unworthy or fraudulent claims.

■ Accepting the fact that the purposes sought are those pointed out, and bearing in mind that the law should

---

[3] To the same effect, see § 22 of Act No. 85 of 1928 *supra;* § 7 of Act No. 10 of 1918 *supra;* and § 11 of Act No. 19 of 1916 *supra*, which granted a period of 10 days therefor.

be liberally construed in order to accomplish the purposes of the statute (§ 2 of the Workmen's Compensation Act, *supra*, as amended by Act No. 94 of June 22, 1957 (Sess. Laws, p. 439, 11 L.P.R.A. 1960 Supp. p. 6)), it is evident that if there is no showing that the failure of the workman or employee to present himself for medical examination has caused prejudice to the Fund, the compensation can not be disallowed. Such prejudice would exist if it were shown that (a) the delay precluded the Fund from conducting a proper investigation for the purpose of ascertaining whether the accident was due to any act or function inherent in the employment and occurring in the course thereof;[4] and (b) the workman or employee did not receive proper and competent treatment after the injury was known, as a result of which the period of disability was unduly extended or the injury was aggravated. See 2 LARSON, Workmen's Compensation Law, § 78.32. It is also necessary to consider that on many occasions the workman is not conscious that he has received an injury because it is not a physical trauma, such as a wound or contusion, and that he realizes it only when the results of the accident become manifest. In such cases it can not be invariably required that he report for medical examination within five days after the occurrence, but after ascertaining, with reasonable care and diligence, that a compensable injury or accident was sustained. *Clark* v. *A. Tucker Electric Co.*, 345 P.2d 620 (Kan. 1959); *William* v. *Dept. of Labor & Industries*, 277 P.2d 338 (Wash. 1954); LARSON, *op.*

---

[4] We have adopted an identical position where an insurance company has interposed as defense the lack of notice. *Lafontaine* v. *Municipality*, 79 P.R.R. 548 (1956); *Landol* v. *Colón*, 78 P.R.R. 572 (1955); *Faulkner* v. *Nieves*, 76 P.R.R. 407 (1954); *cf. Cuebas* v. *Porto Rican and American Insurance Company*, 85 P.R.R. 601. A fortiori, we can not uphold with greater strictness this provision which relieves from liability where a social-benefit act is involved. In the case of a public liability policy required by statute—compulsory insurance—the lack of notice is no defense because the legislative purpose is the protection of the public. Annotation, 31 A.L.R.2d 645 (1953).

*cit.*, § 78.41. Regarding occupational diseases, see Annotation, *When limitation period begins to run against cause of action or claim for contracting of disease*, 11 A.L.R.2d 277, 297–311 (1950).

We now turn to consider the facts of the instant case. Late in March 1960, petitioner Antonio Guzmán Muñoz, who was in charge of a warehouse of Sucesores de Abarca, was required to remove some scrap iron which was piled up in the warehouse yard. For this operation they used a crane which the petitioner was operating that day in the absence of the regular operator. While he was assembling some iron the crane strut broke loose and in order to prevent it from falling and breaking Guzmán suddenly pulled the lever. As a result of the effort made he felt an intensive pain in the chest which he attributed to gases. However, he continued to feel the pain for about two weeks and requested a vacation from his immediate superior, who told him it was not necessary because it was Easter. He also suggested that it was probably gas pains and advised him to take lemon and soda. The pains became worse and in the morning of April 14 he was hospitalized in Pavía Hospital.

He was confined in the hospital under medical treatment until May 7. He was maintained incommunicado and only his wife was permitted in the room. No visitors were allowed. Upon his discharge he was advised to stay in bed for two more weeks, and during that period he was advised to get up for one hour in the morning and another hour in the afternoon.

On the following June 6 he wrote a letter to the Manager of the State Insurance Fund claiming compensation for the accident which he had sustained late in March. The notice was therefore given more than two months after the occurrence of the accident. It appears that he had suffered a coronary thrombosis which caused an infarct of the myocardium. When he was questioned on the reason for his delay

in making claim for compensation, he explained that he did not know "what was wrong with him" until he was confined, and that afterwards he was prevented from doing so because he was not only hospitalized but was recommended absolute rest. As a result of the accident described he has been permanently disabled for work.

The Industrial Commission determined that the accident was covered by the Act, but disallowed the compensation claimed on the ground that the petitioner had not been diligent nor accounted satisfactorily for his delay in presenting himself for medical treatment. We agreed to review this decision.

■ It appears from the record that the Manager's untimely knowledge did not prevent him from conducting the pertinent investigation for the purpose of ascertaining the circumstances surrounding the accident. As a matter of fact, the evidence offered by that officer at the hearing before the Industrial Commission consisted of copies of the sworn statements made by the claimant and by three witnesses in the course of the investigation conducted on July 21 and 23, 1960. Despite the time elapsed no prejudice was caused to him by the delay,[5] since the compensability aspect could have been investigated without any obstacle. On the other hand, the evidence shows that the petitioner underwent the indicated and proper treatment for the injury which he presented. It has not even been insinuated that he did not receive proper professional assistance, nor that the treatment given him aggravated the consequences of the accident which, as has been said, resulted in the workman's permanent disability. This being so, and the Commission having ruled that the

---

[5] On October 7, 1960 the workman was informed of the Manager's refusal to award compensation because the delay "deprived this agency of the opportunity to ascertain whether or not your condition had any relation with the alleged accident." We fail to understand this officer's attitude because since the past July he had the statements of the witnesses from which it appears, as was finally determined by the Industrial Commission, that the accident was a labor accident.

accident was compensable, it erred in denying compensation on the ground of the workman's alleged delay, since it did not result in prejudice to the Fund. We therefore hold that, considering all the surrounding circumstances of this case, the delay was satisfactorily accounted for.

The decision rendered by the Industrial Commission on January 27, 1961, will be set aside and the case remanded with instructions to compensate petitioner.