Ramón Montaner, en su carácter de Administrador del Fondo del Seguro del Estado, recurrente, *v.* La Comisión Industrial de Puerto Rico, etc., demandada, y Eduardo M. Pérez, peticionario ante la Comisión Industrial.

Núm. 218.—*Sometido:* Marzo 24, 1941. *Resuelto:* Marzo 28, 1941.

*Hon. Procurador General George A. Malcolm, E. de Aldrey, Procurador General Auxiliar* y *Víctor J. Vidal González* y *G. Atiles Moréu,* abogados los dos últimos del Fondo del Estado, abogados del recurrente; *Virgilio Brunet* y *José L. Novas,* abogados del peticionario ante la Comisión.

El Juez Asociado Señor Travieso emitió la opinión del tribunal.

El Administrador del Fondo del Seguro del Estado solicita la revocación de la resolución dictada por la Comisión Industrial en enero 3 de 1941, por la cual se ordenó al recurrente que pagase los gastos incurridos por el empleado Eduardo M. Pérez en el arreglo de dos dientes que se le fracturaron en un accidente del trabajo.

Pérez es un empleado del Departamento del Interior. El accidente en que sufrió la fractura de dos dientes ocurrió el 28 de septiembre de 1939. El día 10 de octubre

del mismo año se le dió de alta, como curado y sin incapacidad. El 3 de noviembre de 1939 Pérez apeló para ante la Comisión Industrial, alegando no estar conforme con la decisión del Administrador del Fondo, por haberse negado éste a pagarle el arreglo de los dos dientes fracturados. Nada hizo la comisión, ni tampoco el recurrente, hasta octubre 11 de 1940, en cuya fecha la comisión dictó una resolución requiriendo al administrador para que dentro de un término de cinco días informase "si en realidad se ha negado a pagar el arreglo de los dientes." El 21 de octubre informó el administrador "que no ha procedido al pago de compensación alguna por la pérdida de los dientes de este empleado por entender que dicha pérdida no constituye una incapacidad industrial compensable de acuerdo con la ley." Visto el informe del administrador, la comisión fijó el 18 de noviembre de 1940 para oír a las partes en cuanto a "si el arreglo de los dientes que se partió el lesionado como resultado del accidente que sufriera debe considerarse como parte del tratamiento.

En la vista celebrada ante la comisión, declaró solamente el Sr. Pérez, y dijo: que estaba trabajando en un "test pile" y tenía un andamio puesto y se zafó un cuartón, cayéndole encima del cráneo y causándole la rotura de dos dientes; que la lesión del cráneo no fué nada, pero que parece que al cerrar la boca fué que vino la fractura de los dientes; que estuvo tratándose con el Dr. Pedro G. del Valle por un período de dos meses aproximadamente, yendo todos los días, y que el dentista le cobró $64, según recibo que presenta; que cuando acudió al Fondo del Estado para que viesen la fractura que recibió, fué atendido por los doctores Coll Cuchí y Curbelo, quienes le manifestaron que "ellos me mandaban a sacar los dientes"; que él no estuvo de acuerdo con que le sacaran sus dientes y apeló entonces a la comisión para que le pagasen lo que le había costado la reparación de ambos dientes; que no solicitó compensación por las lesiones recibidas en la cabeza, ni por pérdida de sueldos; que los

dientes fracturados eran dientes naturales u originales; que el médico del Fondo le dijo que la única solución era sacarle los dos dientes; que él creyó que ésa era la decisión del administrador.

Durante la vista del caso, el administrador aquí recurrente fundó su oposición en que de acuerdo con la ley, la pérdida de dientes no constituye la "desfiguración" que da derecho al lesionado a reclamar compensación, porque esa desfiguración no afecta el poder adquisitivo del obrero. No levantó allí la cuestión sobre si el lesionado tiene derecho a reclamar el costo del tratamiento recibido de su dentista particular, después de haberle rehusado ese tratamiento el Fondo del Seguro del Estado. Esa cuestión fué levantada por primera vez por el Administrador del Fondo al solicitar la reconsideración del fallo de la comisión.

Del récord aparece que cuando el reclamante Pérez apeló a la Comisión Industrial, ya el trabajo de reparación de sus dientes había sido realizado.

La única cuestión que tenemos que considerar y resolver es la de si un obrero lesionado, que no está de acuerdo con el tratamiento que para sus lesiones le ofrece el Administrador del Fondo, puede sin intervención o permiso previo de la comisión, recurrir a un médico o dentista para su curación y acudir después de curado a la comisión en reclamación del pago de la cuenta del médico o dentista.

El legislador, pensando sin duda alguna en que en la práctica habrían de ocurrir desavenencias entre el administrador y los lesionados, dispuso por el artículo 5 de la Ley de Compensaciones por Accidentes del Trabajo, aprobada en 18 de abril de 1935 (Ley núm. 45 de 1935, (1) pág. 251), lo siguiente:

"Artículo 5.—Durante el período de inhabilitación, el obrero o empleado lesionado o enfermo, bajo las circunstancias que cubre esta ley, se dejará tratar y examinar a horas y en sitios oportunos por un médico competente designado por el Administrador; *Disponiéndose,* que si el Administrador no proveyera as'stencia adecuada al obrero o empleado, éste podrá acudir ante la Comisión Industrial y ésta, pre-

via investigación por un médico designado al efecto ordenará la asistencia que convenga al caso y el Administrador cumplirá con la orden de la Comisión; . . . .''

En el caso de autos, el lesionado actuó dentro de su derecho al negarse a permitir que le extrajesen los dientes y al insistir en que el Fondo del Seguro del Estado le proveyere la asistencia profesional necesaria para salvarle las piezas fracturadas y dejárselas de ser posible en el mismo estado en que estaban antes de ocurrir el accidente. Empero, al surgir la controversia entre él y los médicos del Fondo, el lesionado hizo caso omiso del estatuto y procedió a hacerse arreglar los dientes por un dentista de su elección, sin contar para nada con la comisión y sin dar intervención al administrador, que es el responsable de la buena inversión de los fondos bajo su custodia.

La práctica seguida por el lesionado en este caso no puede ser aceptada. Si la aprobásemos, sentaríamos un precedente que podría poner en serio peligro la solvencia del Fondo del Seguro del Estado. Sería muy difícil, después de la asistencia y curación de un obrero lesionado sin el consentimiento y autorización de la comisión, que ésta pudiese comprobar el verdadero valor de los servicios prestados al obrero. En el caso de autos no aparece que durante la vista del caso se hiciera el menor esfuerzo para comprobar si la cantidad cobrada por el dentista representaba el valor justo y razonable de los servicios prestados al Sr. Pérez.

Debemos hacer constar que nos ha llamado la atención que una apelación que por su naturaleza requiere una pronta decisión haya permanecido por más de un año—de noviembre 3, 1939, a noviembre 18, 1940—en el calendario de la comisión, sin que ésta tomase acción alguna para resolver si el obrero debía aceptar el tratamiento que le ofrecía el Fondo del Estado o si tenía derecho a recibir un tratamiento distinto ordenado por la comisión después de practicada la correspondiente investigación. En el caso de autos no se ha causado perjuicio alguno al lesionado, pues éste acudió a la

comisión después de haber sido curado; pero, ¿cuál sería la situación de un obrero lesionado, que habiendo recurrido a la comisión de acuerdo con el estatuto, se viese obligado a esperar más de un año para que la comisión dirimiese la controversia entre él y el administrador? Opinamos que la Comisión Industrial debe disponer que las apelaciones de esta naturaleza, que envuelven el tratamiento y curación de una persona lesionada en el trabajo, sean vistas y resueltas con preferencia a otras apelaciones que no sean de carácter urgente.

Por las razones expuestas opinamos que la Comisión Industrial erró al decretar el pago en este caso y que *la resolución recurrida debe ser revocada.*