DR. LUIS E. GONZÁLEZ SALDAÑA, recurrente, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, ETC., y JOAQUÍN GALLART MENDÍA, recurridos.

*Número:* CI-63-3    *Resuelto:* 15 de octubre de 1963

*Luis A. Negrón López* y *Luis Negrón Lizardi,* abogados del recurrente; *Donald R. Dexter, Carmen Ana Archeval* y *Miguel A. Guzmán Soto,* abogados del Administrador del Fondo del Seguro del Estado.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

El recurrente era empleado de la Escuela de Medicina de la Universidad de Puerto Rico en donde trabajaba como patólogo. En 28 de enero de 1960 sufrió una hemorragia gastrointestinal debido a una úlcera duodenal, como consecuencia de un período de trabajo excesivo en que se habían duplicado las funciones y deberes del empleado. Su jefe inmediato, el Dr. Koppisch, le ordenó cama y someterse a tratamiento y ofreció encargarse de los trámites relacionados con el asunto, que envolvían informar al Fondo del Estado y a la

oficina de personal de la Escuela de Medicina. Además del Dr. Koppisch, vieron al paciente los doctores Cuello, García Palmieri y Lugo Rigau, todos relacionados con la Escuela de Medicina. El paciente fue sometido a tratamiento—pruebas de Rayos X, cama, dieta, análisis de sangre, etc. Luego de algún tiempo mejoró considerablemente y pudo reanudar sus funciones. El paciente opina que tuvo atención médica excelente.

El recurrente creía que su enfermedad había sido informada al Fondo pero luego se enteró, al ir a dicha oficina, que ese no era el casò. Hizo las gestiones necesarias y el 15 de enero de 1961 el Dr. Koppisch firmó un informe patronal sobre el asunto, el cual fue recibido en el Fondo el 9 de marzo de 1961. En 9 de mayo de 1961 el recurrente fue visto por un médico del Fondo, quien hizo constar en su informe que el recurrente estaba "asintomático". El diagnóstico rendido en esta ocasión fue "Ulcera duodenal sangrante, tratada-relacionada."

La decisión del Administrador del Fondo del Estado, luego de hacer un breve resumen de los hechos, expresa:

"Vistos los hechos del caso, el Administrador del Fondo del Seguro del Estado resuelve que la condición que presentaba el empleado de referencia allá para el día 28 de enero de 1960, estaba relacionada con su trabajo, y resuelve, además, privar a dicho empleado del derecho a compensación, puesto que él mismo estableció su reclamación después de haber transcurrido un año y doce días de la ocurrencia del accidente, siendo por tanto, negligente en cuanto a reclamar su derecho se refiere."

La Comisión Industrial, por votación de dos a uno, sostuvo al Administrador. El voto del miembro ponente, que se convirtió en el voto minoritario, hace una detallada relación de los hechos. A lo antes dicho, añade dicho voto que en la vista el abogado del Fondo ofreció en evidencia un informe patronal firmado por el Dr. Koppisch de fecha 15 de enero de 1961, el cual en la parte médica aparece firmado por el

Dr. Roberto Rodríguez; que también se ofreció en evidencia otro informe patronal firmado por el Dr. Koppisch en 3 de febrero, recibido en el Fondo del Estado el 9 de febrero de 1961; y que el abogado del recurrente "no objetó que se aceptaran estos informes, pero se refirió a la declaración jurada prestada por el Dr. Koppisch el 8 de marzo de 1961, donde dicho médico declaró que se había hecho un informe después de la hemorragia en 1960, informando el Lcdo. Dexter (abogado del Fondo) que ese informe no aparece en el expediente del Fondo del Estado; que el informe que aparecía era uno firmado en febrero 2 de 1960 y recibido en el Fondo el 9 de febrero del mismo año y otro informe de 15 de enero de 1961 y recibido en el Fondo del Estado en marzo 9 de 1961."

El arriba mencionado informe del Dr. Koppisch de enero de 1960 no apareció en los récords del Fondo (para la fecha en que se vio el caso ante la Comisión el Dr. Koppisch había fallecido). El voto minoritario en la Comisión, favorable al recurrente, se basa en que (1) el reclamante creía de buena fe que el Fondo había sido informado por su jefe inmediato, el Dr. Koppisch; (2) que el recurrente ha explicado satisfactoriamente su demora en presentarse al médico del Fondo; y (3) en que el Fondo no ha sido perjudicado pues el empleado tuvo adecuada atención médica y está asintomático, puede realizar sus labores y las está realizando.

Los dos votos mayoritarios sostuvieron al Administrador por entender que la reclamación del recurrente está prescrita ya que dicha reclamación "fue presentada ante el Administrador del Fondo del Seguro del Estado después de haber transcurrido un año y doce días a partir de la fecha del accidente" y porque el Art. 8 de la Ley Núm. 102 aprobada en 1 septiembre de 1925 dispone, en su parte pertinente, que "si transcurrido un año, a partir de la fecha del accidente o muerte del obrero, no se presentare dicha solicitud, el derecho del obrero o de sus herederos, queda prescrito." La anterior cita la hemos

tomado del voto del Comisionado Don Manuel De Jesús Mangual.

Aclaremos de inmediato que cuando las partes se refieren al Art. 8 de la Ley Núm. 102 de 1 de septiembre de 1925, realmente no se refieren al Art. 8 de esa Ley Núm. 102, sino que se refieren al Art. 8 de la Ley Núm. 10 de 25 de febrero de 1918, el cual fue enmendado por la Sec. 2 de la referida Ley Núm. 102 de 1925. Esa ley del año 1925 denominó "secciones" a sus artículos. Su primera sección enmienda el título de la citada ley de 1918; su Sec. 2 enmienda una serie de artículos—entre ellos el referido Art. 8—de la ley de 1918; su Sec. 3 es la usual cláusula de separabilidad; su Sec. 4 dispone que "Toda ley o parte de ley que se opusiere a la presente, queda por ésta derogada" y su Sec. 5 es la Cláusula de vigencia. Véase Leyes de Puerto Rico, 1925, págs. 905, 907 y 947.

Aparte de si el Dr. Koppisch hizo o no el informe patronal en enero de 1960 a raíz de la enfermedad del empleado, no hay controversia sobre los hechos. Se plantea pues, si el Art. 8 de la Ley Núm. 10 de 25 de febrero de 1918, según enmendado, está o no en vigor. De no estarlo, debemos resolver si el empleado justificó satisfactoriamente su demora en presentarse al médico del Fondo del Estado o si por el contrario su demora en hacerlo no fue satisfactoriamente explicada, a tenor con lo dispuesto en el Art. 5 de la vigente Ley de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. sec. 6.

Estando en vigor la "Ley de Indemnizaciones por Accidentes del Trabajo" de 25 de febrero de 1918, enmendada en los años 1919, 1920, 1921 y 1925, los poderes Legislativo y Ejecutivo aprobaron en 14 de mayo de 1928 la Ley Núm. 85 de ese año, Leyes de Puerto Rico, 1928, pág. 631. La mencionada Ley Núm. 85 de 1928 constituye una nueva ley sobre esta materia de indemnizaciones a obreros. Su Art. 1 la denomina "Ley de Indemnizaciones por Accidentes del Trabajo", nombre

*idéntico* que por disposición también de su artículo primero tenía la ley anterior de indemnizaciones por accidentes del trabajo, Ley Núm. 10 de 25 de febrero de 1918, Leyes de Puerto Rico, pág. 55. Un examen de los títulos y el articulado de la ley de 1918 y de la ley de 1928 nos convence, y sus textos lo demuestran claramente, que la ley de 1928 no es una enmienda a la ley anterior sino que es una ley nueva y completa, cuyo propósito fue substituir la anterior. Basta examinarlas con cuidado para ver que no puede presumirse que la Asamblea Legislativa se propusiera la flagrante anomalía de mantener dos estatutos vigentes a la vez e incompatibles entre sí regulando exactamente la misma materia. La ley de 1928 es más detallada y completa que su antecesora de 1918, según enmendada, conteniendo, sin duda, las adiciones y aclaraciones que la experiencia de diez años de operación de ese sistema en Puerto Rico demostró que eran necesarias. Es cierto que la ley del 1928 no derogó en forma explícita la ley anterior pero no hay duda de que lo hizo implícitamente mediante su Art. 57 en el cual declara derogada toda ley o parte de ley que se opusiere a ella.

◼ Se trata de una derogación conocida como derogación por revisión, la cual opera cuando el poder legislativo aprueba una ley cubriendo de nuevo toda la materia que antes estaba regulada por otra ley anterior y la comparación de ambas leyes demuestra que la intención legislativa fue substituir la ley vieja con la nueva. El poder legislativo en esos casos ha revisado la legislación, substituyendo los viejos criterios con los nuevos. Claro, es preferible que las derogaciones sean expresas, pero la falta de ello no nos puede impedir ver la realidad. *Posadas* v. *National City Bank of New York*, 296 U.S. 497, 503 (1936) ; *Payne* v. *Buchanan*, 148 N.E.2d 537, 540 (1958) ; *St. Louis S.W. Railway Co.* v. *Robinson*, 308 S.W.2d 282, 284 (1957) ; *Chicago R.I. & P.R. Co.* v. *Cohen*, 267 S.W.2d 774, 776 (1954) ; *Meek* v. *Wheeler*, 125 S.W.2d 331, 334 (1939) ; *People* v. *Gould*, 178 N.E. 133, 144

(1931); *Bay Bridge Ferry Corp.* v. *County Commissioners*, 153 Atl. 441, 444 (1931); *Potter* v. *Merchants' and Mechanics' Trust Co.*, 224 N.W. 624, 625 (1929); y *People* v. *Borgeson*, 166 N.E. 451, 453 (1929). Véanse también Crawford, *Statutory Construction*, pág. 674, sec. 326 y Sutherland, *Statutory Construction*, Vol. I, pág. 475, sec. 2018.

■ Es necesario tener presente que luego de la Ley Núm. 10 de 1918, contentiva del Art. 8 en cuestión, se aprobó la mencionada Ley Núm. 85 de 1928 y siete años después se aprobó la vigente "Ley de Compensaciones por Accidentes del Trabajo", Ley Núm. 45 de 1935, la cual en su Art. 51 derogó *expresamente* su antecesora del año 1928. Es claro que habiendo ocurrido toda esa transformación mediante la decretación y redecretación por la Asamblea Legislativa de tres leyes completas y sucesivas sobre la misma materia—la Núm. 10 del 1918, la Núm. 85 de 1928 y la Núm. 45 de 1935 —no está en vigor el Art. 8 de la ley de 1918. Difícilmente podemos atribuirle a dicho artículo tal capacidad felina para sobrevivir una y otra vez esas vicisitudes.

Es de notarse que la vigente Ley de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, Leyes de Puerto Rico, pág. 251, 11 L.P.R.A. sec. 1 y ss. establece distintos términos prescriptivos, de manera expresa, sin dejarlos al arbitrio administrativo ni judicial. Por ejemplo: En su Art. 3, 11 L.P.R.A. sec. 3, al establecer la base para determinar la compensación semanal que corresponde a un obrero señaló expresamente el término de 30 días para apelar de la decisión del Administrador a la Comisión Industrial. En el mismo artículo, al señalar el derecho a recibir compensación en casos de muerte, dispuso que el fallecimiento debía ocurrir dentro de los tres años de ocurrir el accidente. También en dicho artículo tercero, al señalar las enfermedades que dan derecho a compensación, la ley establece que la última exposición al riesgo de adquirir la enfermedad debía ocurrir dentro de los 12 meses anteriores a la fecha de la

incapacidad causada por la misma. En el mismo artículo, se dispone que para establecer las reclamaciones en caso de enfermedades ocupacionales, las reclamaciones deberán establecerse dentro de un período de tiempo que no exceda de tres años a partir de la fecha en que el obrero adquirió conocimiento de la naturaleza de la incapacidad y de su relación con el trabajo. Así también el Art. 4 de la ley, 11 L.P.R.A. sec. 4, establece una serie de términos expresos en relación con la compensabilidad en caso de enfermedades del sistema respiratorio. De igual manera se establecen términos expresos para la apelación a la Comisión Industrial de las decisiones del Administrador en el Art. 10 de la ley, y para solicitar la revisión por el Tribunal Supremo en el Art. 11, 11 L.P.R.A. secs. 11 y 12.

El propio Administrador no parece estar muy seguro de su posición ya que este año sometió al Sr. Presidente del Senado de Puerto Rico un anteproyecto de ley para enmendar la ley vigente de compensaciones por accidentes del trabajo, entre cuyos propósitos, está el de fijar un término de un año para establecer las reclamaciones en casos de muertes ocasionadas por accidentes del trabajo o enfermedades ocupacionales compensables. Dicho anteproyecto se convirtió en el Proyecto del Senado Núm. 475 de 12 de marzo de 1963. Naturalmente que el Administrador no tenía que proponer que se legislase disponiendo un término para las reclamaciones en casos de lesiones o enfermedades porque ya la ley en su Art. 5, 11 L.P.R.A. sec. 6, dispone que el empleado lesionado se presente al médico del Fondo dentro de los cinco días después de ocurrido el accidente, salvo la excepción de demora justificada que el propio artículo admite, y a lo cual nos referiremos más adelante. Si estuviese vigente el Art. 8 de la ley de 1918, como alega el Fondo, y cuyo artículo, según vimos, dispone que si transcurrido un año, a partir de la fecha del accidente o muerte del obrero, no se presentare dicha solicitud, el derecho del obrero o de sus herederos queda prescrito, no sería necesa-

ria la enmienda a la ley que el Administrador ahora solicita. Resolvemos que el Art. 8 de la Ley Núm. 10 de 25 de febrero de 1918, según enmendado, no está en vigor. (¹)

En cuanto al tiempo para informar al Fondo los accidentes ocurridos la ley vigente impone una obligación al patrono y otra al empleado. En su Art. 13, 11 L.P.R.A. sec. 14, la ley dispone que el patrono deberá, dentro de los 5 días después de ocurrido un accidente, presentar un informe escrito al Administrador en blancos suministrados por éste. Dicho artículo impone una sanción a los patronos que rehusaren o descuidaren hacer esos informes. En cuanto al obrero o empleado, el Art. 5 de la ley, 11 L.P.R.A. sec. 6, dispone que éste deberá someterse a examen médico o a tratamiento facultativo provisto por el Administrador y que el obrero o empleado se presentará al médico del Fondo dentro de los cinco días laborables después de ocurrido el accidente. Como señalamos en *Guzmán Muñoz. v. Comisión Industrial*, 85 D.P.R. 700, (1962), hay relación entre esas dos disposiciones de ley.

El citado Art. 5 que dispone el término de cinco días para el obrero o empleado presentarse al médico del Fondo no es absolutamente inflexible sino que permite demora si ésta se "explicare satisfactoriamente" y si se probare "a satisfacción". Si la demora se explica y se prueba satisfactoriamente el Administrador vendrá obligado a pagarle la compensación debida al obrero. Eso dispone, sobre el particular, el Art. 5 de la ley, 11 L.P.R.A. sec. 6. Esto, desde luego, no quiere decir que la ley permite la demora infinita; tales términos como "satisfactoriamente" y "a satisfacción", igual que acontece con lo que es razonable y con lo que es un

---

(¹) Como estamos de acuerdo con el Administrador en que lo dicho al respecto en *Rivera v. Comisión Industrial*, 55 D.P.R. 878 (1940) es un *dictum* y como estamos de acuerdo con el recurrente que allí ni se examinó ni se decidió la cuestión aquí planteada, no creemos necesario alargar más esta opinión discutiendo algo en que las partes y nosotros estamos acordes.

hombre prudente, será objeto de cuidadosa determinación en cada caso.

■ En el caso de autos creemos que el empleado está amparado por las citadas disposiciones del Art. 5 de la ley. Él tuvo razones para creer de buena fe que el patrono había cumplido su deber de informar al Fondo su enfermedad. Ésta fue grave y el empleado tenía que someterse a tratamiento inmediato y así lo hizo. Dada la circunstancia de ser el recurrente un empleado de la Escuela de Medicina y de ser además médico, tuvo rápida y adecuada atención médica. El tratamiento produjo efectos satisfactorios y el empleado pudo reintegrarse a su trabajo. En nada se perjudicó el Fondo; tampoco se privó al Fondo de su oportunidad de investigar si la enfermedad provenía del empleo. El Administrador en su propia resolución determinó que la misma estaba relacionada con el trabajo del recurrente. Tampoco la demora del empleado agravó su condición. *Guzmán Muñoz* v. *Comisión Industrial,* supra; Larson, *Workmen's Compensation Law,* Vol. 2, sec. 68.32.

*Por las razones expuestas en esta opinión se revocará la resolución de la Comisión Industrial dictada en este caso y se devolverá el mismo con instrucciones de compensar al recurrente conforme dispone la ley.*