RAMÓN A. RIVERA RIVERA ET AL., recurrente, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO ET AL., demandada; JOSÉ G. SERRALTA HERNÁNDEZ, lesionado.

*Número*: O-72-226    *Resuelto*: 17 de abril de 1973

*Leoncio Carrasquillo Suárez, Jorge Márquez Gómez* y *Miguel A. Guzmán Soto,* abogados del recurrente.

PER CURIAM: El empleado lesionado José G. Serralta Hernández trabajaba para el patronato de la Oficina del Contralor de Puerto Rico en calidad de contador. El día 16 de noviembre de 1965 sufrió un accidente consistente, según aparece del récord ante nos, en que mientras realizaba su labor sintió un fuerte dolor de cabeza y fiebre alta. Su condición fue diagnosticada por los médicos del Fondo del Seguro del Estado como una "agravación de una condición arterio-esclerótica preexistente, relacionada". Se le brindó tratamiento médico para su condición y fue dado de alta definitiva en 8 de julio de 1966, habiéndosele reconocido una incapacidad equivalente a la pérdida de un 30% de las funciones fisiológicas generales. No conforme el lesionado apeló para ante la Comisión Industrial. Finalmente, en 26 de mayo de 1967, y en base a un informe supletorio del cardiólogo del Fondo, el Administrador aumentó la incapacidad a un 60% de las funciones fisiológicas generales. Esta decisión del Administrador fue confirmada por la Comisión Industrial en 24 de julio de 1967. Por esta incapacidad se le otorgó al lesionado una compensación de $6,000.00, máximo que fija la ley para estos casos.

En 10 de febrero de 1968 el lesionado presentó al Administrador una petición reclamando reembolso de gastos incu-

rridos por motivo de una operación quirúrgica en relación con su condición cardiovascular a que fue sometido en una clínica de Cleveland, Ohio, en el mes de noviembre de 1967. Estos gastos, montantes a $4,300.50, incluyen, entre otras partidas, los pasajes de ida y vuelta a Cleveland con su esposa, hospedaje y honorarios médicos por un arteriograma que se le practicó en aquella ciudad durante el mes de agosto de 1967. Allí estuvo tres días, regresó a Puerto Rico y, en noviembre siguiente, volvió a Cleveland donde se sometió a la operación.

La petición de reembolso fue denegada. El Administrador fundamentó su decisión en que el lesionado no había solicitado su autorización para dicho tratamiento médico, ni le había consultado sobre ello; que no se trataba de una emergencia súbita, que su vida no corría peligro de muerte inmediata y que no había cumplido con los requisitos que exige el Art. 5 de la Ley de Compensaciones por Accidentes del Trabajo (11 L.P.R.A. sec. 6).

Esta decisión fue revocada por la Comisión Industrial en apelación entablada por el lesionado. Solicitada la reconsideración, fue declarada sin lugar. El Administrador recurre ante nos. Señala que la Comisión Industrial incidió al resolver que el Fondo viene obligado a reembolsar los gastos reclamados, contrario a lo dispuesto en el Art. 5 de la Ley de Compensaciones por Accidentes del Trabajo y lo resuelto por este Tribunal en *Montaner, Admor.* v. *Comisión Industrial,* 58 D.P.R. 356 (1941); y al concluir, sin que se presentare la prueba pericial necesaria para ello, que el Fondo del Seguro del Estado no podía ofrecer en Puerto Rico la operación que necesitaba el lesionado, que dicha operación era necesaria para conservar la vida del lesionado y que su condición requería tal tratamiento médico con extrema urgencia.

La vista pública celebrada ante la Comisión Industrial en torno al reembolso de gastos fue sumamente breve. Sólo prestó testimonio el lesionado. Declaró, en síntesis, que luego de "cerrado" su caso ante la Comisión, en agosto de 1967, por

recomendación de un médico particular, se trasladó a la ciudad de Cleveland donde sostuvo una entrevista con un médico de nombre Dr. Shelton; que regresó a Puerto Rico y en el mes de noviembre siguiente le fue practicada la operación en el hospital de Cleveland; que dicha operación era necesaria para conservar su vida; que necesitaba dicho tratamiento con urgencia, y que en Puerto Rico no había las facilidades o equipo para practicarla. Su testimonio es claro al efecto de que no consultó ni obtuvo el permiso o intervención del Administrador del Fondo del Seguro del Estado ni de la Comisión Industrial para someterse a la operación. En cuanto a este extremo, dijo lo siguiente (T.E. pág. 8):

"P. ¿En qué mes se le practicó esta operación?

R. Noviembre de 1967.

P. En noviembre 9 de 1967. En algún momento con anterioridad a la operación le planteó usted a alguno de los médicos del Fondo la necesidad de esa operación o le planteó usted la urgencia para su salud a alguno de los médicos. Conteste indirectamente [sic] la pregunta que le estoy haciendo.

R. Mi caso había cerrado ya en el Fondo.

P. La pregunta que yo le hago, si le había dicho a alguien, a alguno de los doctores del Fondo o a alguien del Fondo de la necesidad de esa operación para su salud.

R. A nadie."

El Art. 5 de la Ley de Compensaciones por Accidentes del Trabajo, Suplemento Acumulativo, 11 L.P.R.A. sec. 6, en la parte que consideramos pertinente, dispone lo siguiente:

"Durante el período de inhabilitación, el obrero o empleado lesionado o enfermo, bajo las circunstancias que cubre este Capítulo se dejará tratar y examinar a horas y en sitios oportunos por un médico competente designado por el Administrador; disponiéndose que si el Administrador no proveyera asistencia adecuada al obrero o empleado, éste podrá acudir ante la Comisión Industrial y ésta, previa investigación por un médico designado al efecto, ordenará la asistencia que convenga al caso y el Administrador cumplirá con la orden de la Comisión; . . . ."

En *Montaner, Admor.* v. *Comisión Industrial,* supra, un empleado lesionado reclamó el costo del tratamiento recibido de su dentista particular, después de haberle rehusado ese tratamiento el Fondo del Seguro del Estado, en el arreglo de dos dientes que se le fracturaron en un accidente del trabajo. Basados en esa disposición, resolvimos que no procedía el reembolso de los gastos incurridos. Expresamos allí (a la pág. 359) :

"En el caso de autos, el lesionado actuó dentro de su derecho al negarse a permitir que le extrajesen los dientes y al insistir en que el Fondo del Seguro del Estado le proveyere la asistencia profesional necesaria para salvarle las piezas fracturadas y dejárselas de ser posible en el mismo estado en que estaban antes de ocurrir el accidente. Empero, al surgir la controversia entre él y los médicos del Fondo, el lesionado hizo caso omiso del estatuto y procedió a hacerse arreglar los dientes por un dentista de su elección, sin contar para nada con la comisión y sin dar intervención al administrador, que es el responsable de la buena inversión de los fondos bajo su custodia.

La práctica seguida por el lesionado en este caso no puede ser aceptada. Si la aprobásemos, sentaríamos un precedente que podría poner en serio peligro la solvencia del Fondo del Seguro del Estado."

No hay duda de que la condición que sufría el lesionado era sumamente seria. El lesionado declaró que temía perder su vida dada su condición cardiovascular. Es muy posible, aunque no hubo prueba médica al efecto, que en Puerto Rico no existiesen las facilidades hospitalarias para llevar a cabo, con razonables probabilidades de éxito, la operación y que ello requiriese el traslado del lesionado a Cleveland donde sí las había. Pero, para nosotros es evidente, y en ello concurrimos con el recurrente, que la prueba no revela una situación de emergencia que justificase ignorar al Administrador. Transcurrieron así tres meses desde la primera visita del lesionado a Cleveland en agosto y la operación, tiempo más que sufi-

ciente para gestionar su intervención, o la de la Comisión como lo requiere el Art. 5 de la Ley.

La Comisión Industrial cometió error al ordenar el reembolso reclamado por el lesionado. *Se revocarán las resoluciones de la Comisión Industrial de Puerto Rico dictadas en 16 de diciembre de 1971 y en 19 de junio de 1972.*