CARLOS A. MÁRQUEZ ALFONSO, lesionado; CONTINENTAL COLLECTION SERV., INC., patrono; COMISIÓN INDUSTRIAL DE PUERTO RICO, ETC., demandada y recurrida, *v.* FONDO DEL SEGURO DEL ESTADO, asegurador y recurrente.

*Número:* O-76-377    *Resuelto:* 17 de noviembre de 1976

---

(9) Goldberg, H., *Veterinary Medical and Nonmedical Use of Antibiotics*, Vol. 22, No. 1, Food Drug Cosm. L.J., págs. 33–40 (1967).

*Víctor G. Colón Hernández, Guillermo Figueroa Prieto* y *Fran-cisco Falú Lebrón,* abogados del recurrente; *Gerardo Mariani Padilla* y *Raymundo Suárez Lazú,* abogados del lesionado.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

El 23 de enero de 1968, aproximadamente a las 7:00 P.M., mientras conducía un vehículo de motor en gestiones propias de su empleo, Carlos A. Márquez Alfonso tuvo un violento y serio accidente en la intersección de las carreteras números 2 y 165, Toa Baja, Puerto Rico. La evidencia desfilada ante la Comisión Industrial demuestra, en síntesis, que de dicho lugar fue llevado de inmediato al Centro de Salud de Toa Baja donde fue atendido por un facultativo que le diagnosticó un rasguño en el brazo izquierdo. Accediendo a su solicitud y por ser miembro de la institución, fue trasladado al Hospital Auxilio Mutuo en Río Piedras, donde ingresó con carácter de emergencia quejándose de fuerte dolor en el pecho. Las radiografías demostraron fracturas de las costillas 4, 5, 6 y 7 izquierdas y se le diagnosticó[1] hemo-neumotorax. En el transcurso de las horas experimentó dificultad para respirar, condiciones que requirieron drenaje (punción en el pulmón) y traqueotomía en la sala de operaciones. Estuvo en la Unidad de Tratamiento Intensivo hasta el 2 de febrero de 1968, y luego en la Sección de Cirugía hasta el 21 de febrero, en cuyo día se le ubicó en la Sección de Medicina hasta que fue dado de alta el 14 de marzo de 1968.

Aun cuando de los documentos ante nuestra consideración no aparece la fecha precisa, su abogado notificó al Administrador del Fondo del Seguro del Estado del accidente y su reclusión hospitalaria. Previa investigación, evaluación y tratamiento médico ulterior en el Fondo, se rindió finalmente el siguiente diagnóstico: fracturas de las costillas 2, 3, 4, 5, 6, 7 y 8 izquierdas; de las costillas 2, 3 y 4 derechas; hemo-neumotorax recuperado; pleural engrosados y adherencias pleurodiagrasmáticas lado izquierdo, todo relacionado con el accidente. En vista de ello, el Administrador determinó que el accidente era compensable y le reconoció una incapacidad del 50% de las funciones fisiológicas generales que la Comi-

---

[1] En adición se le hicieron análisis rutinarios y una prueba que resultó negativa en cuanto a posible rotura del esófago.

sión Industrial amplió al adjudicarle una incapacidad total permanente.

En 21 de abril de 1972 el obrero Márquez solicitó del Administrador el reembolso de la suma de $5,595.43 en concepto de "tratamiento especial", "intervención de especialistas" y "enfermeras especiales" durante su estancia en el Auxilio Mutuo por el período comprendido desde la fecha de su ingreso hasta el 21 de febrero, esto es limitado al tiempo en que estuvo en la Unidad de Tratamiento Intensivo y en la Sección de Cirugía. El Administrador denegó aduciendo que en la solicitud de reembolso el peticionario ". . . expresó que como podía pagar los servicios prefirió quedarse allí ya que su condición requería tratamiento médico especial y la intervención de especialistas. . . .", decidiendo que ". . . en igualdad de condiciones el aquí peticionario ignoró las facilidades médicas provistas y disponibles por el Asegurador." En alzada la Comisión Industrial revocó al Administrador, quien mediante el presente recurso de revisión acude ante nos solicitando reinstalemos su dictamen argumentando haber la Comisión incurrido en los siguientes errores:

"Que la Honorable Comisión Industrial cometió error de derecho al resolver contrario a lo dispuesto en el Artículo 5 de la Ley de Compensaciones por Accidentes del Trabajo (11 LPRA-6), cuando concluyó, que a pesar de que voluntariamente el lesionado solicitó ser trasladado y se trasladó al Hospital Auxilio Mutuo donde recibió tratamiento, el Fondo del Seguro del Estado viene obligado a reembolsar los gastos en que incurrió en dicho Hospital.

"Que la Honorable Comisión Industrial incurrió en error de derecho al resolver contrario a la jurispudencia establecida por esta Honorable Superioridad en los casos de *Montaner, Admor.,* vs. *Comisión Industrial,* 58-DPR-356 y *Rivera, Admor.,* vs. *Comisión Industrial,* 101-DPR-281.

"Que la Honorable Comisión Industrial cometió error de derecho en la evaluación del testimonio de los peritos médicos; y también al no considerar la totalidad de la evidencia, haciendo así caso omiso de lo dispuesto por nuestro Honorable Tribunal

Supremo en el caso de *Alonso García* vs. *Comisión Industrial*, recurso número O-75-45, resuelto en 21 de abril de 1975."

Analicemos conjuntamente estos errores.

## I

■ La Ley Núm. 45 de 18 de abril de 1935, según enmendada, (²)—denominada Ley de Compensaciones por Accidentes del Trabajo—representa el andamiaje jurídico, sustantivo y procesal, para proveer indemnización, sujeto a ciertas normas, a los obreros que resultaren lesionados y a sus dependientes, si aquellos fallecieren, como resultado del desempeño de sus oficios y ocupaciones. Como ocurre con otras leyes esta pieza legislativa contiene disposiciones que son amplias y específicas, otras claras y obscuras, y algunas lagunas sobre las cuales de vez en cuando, los tribunales vienen obligados a interpretar al adjudicar controversias. El caso que nos ocupa corresponde a este último extremo, pues la única disposición que guarda cierta relación con la controversia es su Art. 5. (³) Al amparo de dicho artículo hemos repetida-

(²) 11 L.P.R.A. sec. 1 *et seq.*

(³) En lo pertinente dispone:

"Durante el período de inhabilitación, el obrero o empleado lesionado o enfermo, bajo las circunstancias que cubre esta Ley se dejará tratar y examinar a horas y en sitios oportunos por un médico competente designado por el Administrador; disponiéndose, que si el Administrador no proveyera asistencia adecuada al obrero o empleado, éste podrá acudir ante la Comisión Industrial y ésta, previa investigación por un médico designado al efecto, ordenará la asistencia que convenga al caso y el Administrador cumplirá con la orden de la Comisión y Disponiéndose además, que cuando por naturaleza del accidente a discreción del Administrador o su representante autorizado, fuere necesario alojar y atender al obrero o empleado lesionado en un hospital gubernamental, dicho hospital gubernamental podrá cobrar al Fondo del Seguro del Estado, por la asistencia y estadía de dicho lesionado en un hospital, aquella cantidad que acordare con el Administrador.

"El obrero o empleado lesionado tendrá derecho a designar por su cuenta un médico o un cirujano para que presencie su examen o le preste tratamiento. Esto, sin embargo, no afectará el derecho del médico o del cirujano designado por el Administrador para visitar al obrero o em-

mente resuelto que un obrero por regla general viene obligado, salvo circunstancias eximentes, a notificar o personarse al Fondo dentro del término de cinco (5) días y a obtener la previa autorización del Administrador para cualesquiera tratamientos médicos necesarios, por ser éste el funcionario ". . . responsable de la buena inversión de los fondos bajo su custodia", *Montaner Adm.* v. *Comisión Industrial*, 58 D.P.R. 356, 359 (1941). Por excepción solamente ante "una situación de emergencia" es que se puede ignorar el trámite oficial, *Administrador* v. *Comisión Industrial*, 101 D.P.R. 281, 285–286 (1973). Resulta claro, que de ordinario todo tratamiento médico, incluyendo la hospitalización del obrero, debe ser en las facilidades hospitalarias gubernamentales tanto a nivel estatal como municipal, (4) autorizados por el Fondo y que lo contrario es la excepción. Toda demora en notificar al Fondo o presentarse a examen médico tiene que ser satisfactoriamente explicada y documentada. *González Saldaña* v. *Comisión Industrial*, 89 D.P.R. 267, 275 (1963).

■ Al igual que otras áreas del derecho, no existe una regla mecánica e inflexible que permita medir con precisión matemática cuáles hechos constituyen casos excepcionales de "situación de emergencia"; sin embargo es posible detectar ciertos criterios que nos permiten precisar en cierto grado el concepto, tales como el elemento tiempo, el estado de consciencia del obrero y el carácter o naturaleza de la lesión.

En primer lugar, debe tratarse de una *emergencia* real o aparente que exija y amerite pronta atención médica para

---

pleado lesionado en todos los momentos que considere oportuno y bajo circunstancias razonables, durante el tiempo que esté imposibilitado de trabajar." (11 L.P.R.A. sec. 6.)

(4) Mediante la Ley Núm. 48 de 22 de mayo de 1968 se eliminó la restricción a hospitales municipales y límite de costo ascendente a $2.00 diarios que prevalecía, autorizándose no sólo el uso de cualesquiera hospitales gubernamentales, sino el cobro, por la asistencia y estadía del obrero de ". . . aquella cantidad que [el hosiptal] acordare con el Administrador." Vol. 22, IV *Diario de Sesiones*, págs. 1517–1518 (1968).

salvar la vida del obrero o evitar grave daño o complicación adicional en orden al carácter de las lesiones recibidas. El concepto emergencia denota una combinación de circunstancias que necesariamente requieren un inmediato curso de acción o remedio. En síntesis, la doctrina enuncia una situación de hechos que imperativamente conlleva acción rápida en evitación de la muerte del lesionado o grave complicación a su salud. No toda conducta ante una emergencia convalida el curso de acción seguido, sino que debe ser razonable dentro de las circunstancias particulares de cada caso y no hijas de una mera irreflexión o conveniencia. ([5]) Ejemplarizantes de situación de emergencia en el contexto de la ley que nos ocupa, merecen aprobación las siguientes situaciones: ([6])

"a) Cuando el obrero lesionado se desmaya o queda inconsciente y terceras personas lo recluyen en la primera facilidad hospitalaria adecuada que encuentren;

b) Cuando el obrero lesionado padece de una condición emocional [que pone en riesgo su vida o la vida de las personas que le rodean] y es recluido por sus familiares o terceras personas en facilidades hospitalarias ajenas al Fondo del Seguro del Estado; y

c) Cuando la condición física del lesionado es tan crítica que su reclusión es de emergencia y tiene que recluirse en facilidades ajenas al Fondo del Seguro del Estado por quedar éstas distantes o por lo intensivo de la hora en que el lesionado entre en crisis."

■ De los dos primeros ejemplos, como denominador común se desprende que el obrero lesionado no ha intervenido, debido a su condición, en la decisión adoptada por terceros de recluirlo en determinado hospital; y del tercero, un estado físico grave en relación con la accesibilidad del hospital a base de consideraciones prácticas de distancia y hora, y fa-

---

([5]) Consúltese: *Armstrong* v. *Allstate Ins. Co.*, 217 S.E.2d 486, 487 (1975); *Ingalls Shipbuilding Corp.* v. *Holcomb*, 217 So.2d 18, 21–23 (1969).

([6]) Memorándum del recurrente, pág. 12.

cilidades adecuadas. Otra excepción que cabe mencionar es la ignorancia total y absoluta, *bona fide*, del lesionado de que el accidente que motivara la hospitalización es uno comprendido en la Ley de Accidentes del Trabajo.

■ Finalmente, el tratamiento debe haber producido efectos satisfactorios, no haberle privado al Administrador de investigar oportunamente el caso: *González Saldaña*, supra, pág. 276; y para que proceda el reembolso de los gastos incurridos deben concurrir los siguientes requisitos: (1) hayan sido necesarios e indispensables (no simple conveniencia); (2) se hayan efectiva y realmente incurridos por el lesionado (no satisfechos por otras fuentes colaterales, tales como seguros públicos o privados u otros tipos de planes médicos); y (3) correspondan a las tarifas o cuantías razonables que el Administrador fija y acepta.

## II

Apreciada en su justa perspectiva el trasfondo de principios jurídicos envueltos a la luz de las circunstancias de hechos específicos probados, coincidimos con la Comisión Industrial de que en este caso se trataba de una "situación de emergencia" que ameritaba la inmediata hospitalización del lesionado. En los autos hay suficiente base para respetar la apreciación de prueba de la Comisión concluyendo que ". . . aun cuando no hubiera un estado de semi-inconsciencia por parte del obrero al momento de él solicitar, si fue que solicitó, que fuera llevado al Hospital Auxilio Mutuo, lo cierto es que las condiciones en que estaba . . . no le permitían hacer o tomar una decisión fría, calculada y razonable, y por consiguiente inteligente, que lo llevara a menospreciar deliberadamente las facilidades del Fondo del Seguro del Estado." Resulta atinada y sostenible la expresión ". . . de que si en algún momento el obrero mostró alguna predilección por que fuera llevado al Hospital Auxilio Mutuo, en un posible estado de semi-inconsciencia, la misma es una reacción natural de una

persona seriamente accidentada que menciona el nombre de un hospital que probablemente conoce y que le presta confianza en los momentos tan difíciles que estaba pasando. . . ."

■ No obstante, lo anterior no sería suficiente para haber omitido los trámites de ley y haberse hospitalizado en una institución privada. Sin embargo, la presencia de otros factores determinantes abonan a la conclusión de la Comisión Industrial. A tal efecto, la prueba concluyentemente demostró que el lesionado desconocía, de buena fe, que el accidente fuera compensable, ya que era la primera vez que salía en automóvil en una gestión en cobro de dinero.[7] El Administrador correctamente aceptó implícitamente tal realidad al admitir la notificación tardía.

Y además, el lesionado era socio del Auxilio Mutuo. Tomamos conocimiento judicial[8] de que esta institución brinda a sus miembros los servicios necesarios de tratamiento médico y hospitalización sin costo adicional al de la cuota mensual. El haberse ingresado y tratado al lesionado en dicho hospital, tuvo como consecuencia reducir los gastos que se hubiesen incurrido en un hospital gubernamental. Todo indica que el tratamiento fue satisfactorio y que hasta la fecha en que el lesionado limita su reclamación de reembolso, padecía de una condición delicada y de cuidado, que a juicio unánime de los facultativos no era compatible con un traslado a otro hospital.

En su consecuencia resolvemos que la Comisión Industrial no cometió ninguno de los errores señalados al ordenar el reembolso.

En la determinación de cuáles gastos deben ser reembolsados, el Administrador viene obligado a examinar que los mismos cumplan con los requisitos apuntados en esta opinión, a saber: necesarios e indispensables; incurridos realmente

---

[7] Mientras estaba hospitalizado fue que por asesoramiento de su abogado advino en conocimiento de tal eventualidad.

[8] *Candal* v. *Sociedad Auxilio Mutuo,* 37 D.P.R. 874 (1928).

por el lesionado; y de cuantía razonable. A tal efecto cabe mencionar que la decisión de proveer enfermeras especiales, según el propio testimonio del obrero, fue una adoptada por su hijo. El Administrador deberá determinar si los gastos incurridos en el servicio de enfermeras y los otros cumplen con los criterios mencionados.

*Se dictará la correspondiente Sentencia expidiendo el auto y modificando la Resolución de la Comisión Industrial conforme los criterios expuestos.*

El Juez Asociado Señor Martín concurre en el resultado sin opinión.